[No. D045260. Fourth Dist., Div. One. Dec. 19, 2005.]

ROBERT J., Plaintiff and Respondent, v.
CATHERINE D., Defendant and Appellant.

## COUNSEL

Judith E. Klein for Defendant and Appellant.

Stephen Temko for Plaintiff and Respondent.

**OPINION**

**AARON, J.—**

I.

INTRODUCTION

Appellant Catherine D. challenges an order of the trial court denying her request for attorney fees under Family Code[1] section 7640. Section 7640 gives the court discretion to award attorney fees to a party for the costs associated with actions brought pursuant to California's Uniform Parentage Act (§ 7600 et seq.).[2]

Catherine sought attorney fees she incurred relating to an order to show cause (OSC) she filed seeking modification of a custody and visitation order entered in a paternity action previously instituted by her daughter's father, Robert J. The parties had stipulated to paternity in the paternity action. The trial court concluded that once the trial court adopted the stipulation and paternity was established, there was no longer an "action" in which attorney fees could be awarded. According to the trial court, the attorney fees provision of the CUPA grants courts the power to award attorney fees only for those proceedings that take place prior to final judgment on the issue of paternity. The trial court thus concluded that it was without discretion to award Catherine attorney fees for the costs of preparing for and litigating the custody and visitation issues raised by the OSC she filed after the final order of paternity had been entered.

We disagree with the trial court's interpretation of section 7640, and conclude that section 7640 gives the trial court discretion to award attorney fees for proceedings on the issues of custody, visitation, and support that occur after paternity has been established and/or after judgment. Thus, the trial court had discretion to grant or deny Catherine's request for attorney fees. Because the court concluded that it did not have discretion, and acted accordingly, we reverse and remand the matter to the trial court with directions to determine whether an award of attorney fees is appropriate in this situation.

---

[1] Subsequent statutory references will be to the Family Code unless otherwise noted.

[2] In 1975 California adopted portions of the 1973 version of the Uniform Parentage Act authored by the National Conference of Commissioners on Uniform State Laws. Because California's version is also referred to as the "Uniform Parentage Act," subsequent references to the California version of the Uniform Parentage Act will be to the CUPA, and references to the Conference of Commissioners on Uniform State Laws 1973 version of the Uniform Parentage Act will be to the UPA.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 31, 2000, Robert filed a petition to establish paternity of his unborn daughter, J. Robert asked the court to determine that he had a parent-child relationship with J., and to award the parties joint legal custody, with Robert having physical custody and Catherine being allowed reasonable visitation. Filed with the petition was a stipulated order for paternity, custody, and visitation. The stipulation incorporated a detailed custody and visitation agreement between Robert and Catherine and their attorneys. The agreement provided that Robert would have physical custody of J., and Catherine would have reasonable visitation with J. at Robert's house.

On September 4, 2003, Catherine filed an OSC requesting that the existing custody and visitation order be modified. She sought sole physical custody of J., with Robert to be allowed reasonable visitation, on both an interim and long-term basis. She requested that Robert be required to submit to a psychological examination, appointment of an attorney for J. to be paid by Robert, guideline child support, and attorney fees for the costs of bringing the OSC.

On October 10, Robert filed an OSC to bifurcate the custody issue from the child support issue and to try the custody issue first. Robert filed a responsive declaration to Catherine's OSC on October 14.

On November 13, 2003, the court heard arguments as to the custody issue raised by Catherine's OSC. Concerned with a possible risk of harm to J. if Catherine were awarded custody, the court denied the request for an interim change in custody and refused to allow Catherine unsupervised visitation. The court ordered a full psychological evaluation of the parties and J., and an alcohol and drug assessment of Catherine.

On December 5, 2003, Robert filed a reply declaration and a memorandum of points and authorities opposing Catherine's request for attorney fees and costs.

On June 18, 2004,[3] Robert filed a revised and supplemental memorandum of points and authorities in opposition to Catherine's request for attorney fees. Robert argued that section 7640 did not allow for an award of attorney fees after judgment had been entered in the case.

On June 18, 2004, both parties filed supplemental declarations regarding their respective financial positions and statements regarding the financial circumstances of the other party. Robert sought a statement of decision from the court pertaining to a number of legal and factual issues, including the legal authority for an award of fees to Catherine.

The court held a hearing on the attorney fees issue on June 25. The court filed its statement of decision, which included its findings and orders, on July 2. The court denied Catherine's request for fees, concluding, "Section 7640 by its terms authorizes this court to order reasonable fees and other costs of the action and pretrial proceedings. The issue of paternity has been resolved with practical finality. The parties stipulated to it, the court adopted that stipulation as an order of the court. . . . The 'action' in this paternity case had concluded and there will be no 'trial' on the issue of paternity. [¶] The instant motion does not fall within the ambit of Family Code 7640 because the action has in effect concluded. There is no statutory basis for an award of attorney's fees to Respondent. There is no provision for an award of fees post-trial, or of fees incurred in a related proceeding, with respect to paternity actions."

On July 30, 2004, the court issued its findings and order after hearing, to which it attached and incorporated by reference the findings made in its July 2 statement of decision. On September 27, 2004, Catherine filed a notice of appeal from the July 30 order.

III.

DISCUSSION

At issue in this case is the scope of a court's authority to award attorney fees in an action to establish paternity under the CUPA. Specifically, the question presented is whether a court may award attorney fees arising from

---

[3] The parties did not address what occurred in the case between December 2003 and June 2004, and the record contains only secondhand information as to the case-related events during this time. According to a declaration filed in the trial court, it appears that the parties engaged in discovery, had multiple discovery disputes, and participated in at least one settlement conference during this time.

proceedings that occur after the entry of a final order or judgment. Interpretation of the statute presents a question of law, which is subject to de novo review. (See *Banning v. Newdow* (2004) 119 Cal.App.4th 438, 444 [14 Cal.Rptr.3d 447] (*Banning*).)

Catherine contends that the trial court erred in concluding that section 7640 does not grant it the authority to award attorney fees for the costs of litigating her requests to modify the custody, visitation and support order. Section 7640 provides: "The court may order reasonable fees of counsel, experts, and the child's guardian ad litem, and other costs of the action and pretrial proceedings, including blood tests, to be paid by the parties, excluding any governmental entity, in proportions and at times determined by the court." By its text, the statute allows for an award of attorney fees for the costs of the "action." What is not apparent, however, is what the term "action" means in this context. Neither the CUPA nor the general provisions of the Family Code provide a definition of action to aid us in our analysis.

Robert contends that an action under the CUPA exists only where there remains a controversy as to the issue of paternity, and that an action ends upon judgment and/or when the issue of paternity is resolved. Thus, once a judgment is entered in a case brought pursuant to the CUPA, the action is extinguished. Although no formal judgment was entered in this case, Robert contends that the order of the court accepting the parties' stipulation as to paternity ended the controversy and, therefore, like a judgment, represented the end of the action.[4] Thus, he maintains, the trial court had no authority to award Catherine attorney fees she accrued as a result of proceedings that occurred after the court entered the order establishing his paternity.

We disagree that the final paternity determination is necessarily equivalent to a judgment, or that either the final paternity determination or a formal judgment signifies the end of an action pursued under the CUPA. Rather, the term "action" in section 7640 encompasses *all* of the proceedings that occur in a case initiated through a petition to establish parentage, which may include custody and support determinations or modification proceedings that occur after judgment. As a result, an action initiated by a petition to establish

---

[4] Everyone, including the trial court, appears to agree that there has been no actual judgment in this matter. The trial court stated, "The parties' stipulation, incorporating the private agreement, was adopted as an order of the court. For reasons unknown, a judgment was never pursued." Robert argues that final determination of paternity is equivalent to a judgment. For a number of reasons, we disagree that this is necessarily true. However, because we conclude that neither the determination of paternity nor a judgment marks the end of a CUPA action, we need not address the issue.

a parental relationship is not necessarily extinguished upon the court's final determination of parentage or upon the entry of a final order or judgment.

Though not specific to the Family Code, the Code of Civil Procedure provides that "[a]n action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Code Civ. Proc., § 22.) This broad definition suggests that an action encompasses all that is involved in prosecuting a case to its final resolution. Although a judgment may represent the final resolution of a case in many situations, we are not convinced that this is necessarily true in the unique circumstances presented by family law cases. As the court acknowledged in *In re Marriage of Schaffer* (1999) 69 Cal.App.4th 801, 807–808 [81 Cal.Rptr.2d 797], "[F]amily law cases often do not end at the 'final' judgment of dissolution. Because family law cases typically entail issues concerning an ongoing relationship rather than a distinct event—child support, custody and visitation, for example—the law builds in the necessary flexibility to accommodate changing circumstances by postjudgment orders to show cause hearings where the judgment has provided jurisdiction to do so. Unlike an auto accident case which might end with a tidy final judgment for money damages, the successive modifications possible in a family law proceeding can make the case resemble an unruly desert caravan strung out upon the sands."

Indeed, the CUPA specifically contemplates that a petition to establish paternity will likely involve orders regarding custody, visitation, and support, and provisions of the statute grant the court the authority to make such orders. (§ 7637.) The CUPA also grants the court continuing jurisdiction to modify or amend its previous judgments and orders. (§ 7642 ["The court has continuing jurisdiction to modify or set aside a judgment or order made under this part"].) In doing so, the CUPA envisions that an action under its provisions may include a series of proceedings to determine child support, visitation, and/or custody.

Of course, if the court determines that a party does not have a parental relationship with the child at issue, then custody, visitation, and support orders are unnecessary. In such a case, the determination of paternity may, in fact, signal that the paternity action has ended. However, in cases where a parental relationship is established, resolving the issues of custody, visitation, and support then becomes necessary.[5] For parents who are neither married

---

[5] In fact, as this case illustrates, in situations where the parents stipulate to paternity, the issues of custody, visitation, and support become the central issues for the court to determine.

nor in domestic partnerships, petitions to establish parentage under the CUPA represent the only method for resolution of child custody, visitation, and support issues, even if there is no controversy about parentage. There is nothing in the statute that would indicate that proceedings to determine custody, visitation, and support issues, which are only properly considered if a parental relationship has been determined to exist, are not part of an action under the CUPA.

At least one court has affirmed the awarding of attorney fees for proceedings held subsequent to the establishment of paternity. In *Banning, supra,* 119 Cal.App.4th 438, the appellate court analyzed whether section 7640's cost-shifting provisions are constitutional in the context of court-awarded fees for requests to modify custody and support arrangements. Robert argues that *Banning* does not provide authority for this case because the *Banning* court was not asked to consider the question before us.[6] What is significant for our purposes, however, is the fact that the attorney fee award challenged in *Banning* arose from custody and child support proceedings that occurred after the paternity issue had been fully resolved. (*Banning, supra,* 119 Cal.App.4th at p. 443.) Thus, as in this case, the paternity issue had been resolved prior to the proceedings for which the court ordered the father in *Banning* to pay a portion of the mother's attorney fees.[7] Although *Banning* resolved the question of the constitutionality of section 7640, and not the question before us, the *Banning* court impliedly had to interpret section 7640 as authorizing trial courts to award attorney fees for proceedings held subsequent to resolution of the paternity issue. Otherwise, there would have been no need for the *Banning* court to have considered the constitutional question. (See *Wolston v. Reader's Digest Assn., Inc.* (1979) 443 U.S. 157, 160–161, fn. 2 [61 L.Ed.2d 450, 99 S.Ct. 2701] [courts should resolve dispositive statutory issues before reaching constitutional issues].) *Banning* is thus consistent with our interpretation of the statute.

In further support of his argument that section 7640 does not give a court the authority to award attorney fees after a judgment of paternity has been entered, Robert refers us to section 2030, the provision that authorizes courts to award attorney fees in dissolution, legal separation, or nullity actions. At the time of this proceeding, section 2030, subdivision (c) provided: "For

---

[6] Robert does not argue that *Banning* is inapplicable for factual reasons, thus implicitly acknowledging that *Banning* involves a factual situation similar to the one presented here.

[7] It is unclear whether the original custody order in *Banning* was a final order or was considered by the appellate court to have been equivalent to a judgment. However, because paternity had to have been established prior to any custody award or modification of custody, to the extent Robert argues that the determination of paternity ends the "action" referred to in section 7640, *Banning* is instructive.

services rendered or costs incurred after entry of judgment, the court may award the attorney's fees and costs reasonably necessary to maintain or defend any subsequent proceeding, and may augment or modify an award so made, including after an appeal has been concluded."[8] According to Robert, the fact that section 7640 does not have a similar specific provision addressing the court's ability to award costs for proceedings after a judgment must mean that section 7640 does not authorize such an award.

 The fact that the Legislature chose to be very specific in setting out the attorney fees provision in the context of dissolution cases, however, does not necessarily reflect on the meaning of the words in the attorney fees provision of the CUPA. First, there is no evidence suggesting that the Legislature's adoption of the particular wording in section 7640 was intended to be contrasted with what the trial court called the "meaningful and specific attorney's fee provisions" enacted in section 2030, subdivision (c). Rather than being the result of deliberate drafting by the California Legislature, section 7640 was simply California's adoption of the corresponding provision in the 1973 UPA.[9] It is not surprising, then, that the language and structure of the two provisions are entirely different. For example, section 2030 does not make any reference to an action and section 7640 does not make any reference to a judgment. Under these circumstances, we have no reason to think that the Legislature purposefully intended to give a narrow construction to the term "action" by failing to specifically list postjudgment proceedings as being covered by the provision. Rather, an action under this statute should include all of the proceedings that are contemplated to occur within the context of a petition to establish paternity, which by the CUPA's terms, may include proceedings to determine issues of custody, support, and visitation, and proceedings to modify final orders or judgments. (§§ 7637, 7642.)

Robert contends that the inclusion of the phrase "pretrial proceedings" in section 7640 suggests that fees for posttrial proceedings are not included in the provision. Robert argues that because section 7640 refers only to the costs of pretrial proceedings and the costs of the action, the absence of any discussion of postjudgment proceedings such as were referenced in section

---

[8] The provision was amended in 2004 and no longer makes any mention of "entry of judgment." The provision effective January 1, 2005, now reads: "The court shall augment or modify the original award for attorney fees and costs as may be reasonably necessary for the prosecution or defense of the proceeding, or any proceeding related thereto, including after any appeal has been concluded." (§ 2030, subd. (c).)

[9] The contents of section 7640 were originally codified in 1975 at former Civil Code section 7011. (See Historical and Statutory Notes, 29G West's Ann. Fam. Code (2004 ed.) foll. § 24600, p. 306.) In 1992, the provision was moved without change to section 7640. Section 7640 became operative on January 1, 1994. It was amended in 1994 to add "excluding any governmental entity."

2030 means that courts do not have the authority to award attorney fees for proceedings that occur after the entry of judgment.

In our view, the specific inclusion of pretrial proceedings does not limit the meaning of action to events that occur prior to entry of judgment. Rather, the reference to pretrial proceedings in the statute appears to be a reference to a special separate proceeding provided for in the 1973 UPA, which was only partially adopted in California.

Section 10 of the 1973 UPA, entitled "Pretrial Proceedings," provided for a specific informal hearing that was to occur after the filing of the petition. (9B West's U. Laws Ann. (1973) U. Parentage Act, § 10.) The 1973 UPA drafters described this specialized, informal proceeding in subdivision (a) of the section: "As soon as practicable after an action to declare the existence or nonexistence of the father and child relationship has been brought, an informal hearing shall be held. [The court may order that the hearing be held before a referee.] The public shall be barred from the hearing. A record of the proceeding or any portion thereof shall be kept if any party requests, or the court orders. Rules of evidence need not be observed." (9B West's U. Laws Ann., *supra*, U. Parentage Act, § 10, subd. (a), p. 442, brackets retained.) The comment to section 10 explains, "Sections 10 through 13 provide details concerning the pre-trial hearing. The purpose of the pre-trial hearing is to minimize inconvenience and embarrassment in the many cases which the Committee expects will be resolved on the basis of the voluntary compromise contemplated by Section 13." (9B West's U. Laws Ann., *supra*, U. Parentage Act, com. to § 10, p. 442.)

Thus, pretrial proceedings under the 1973 UPA were specific informal hearings in which the normal rules of evidence would not apply and from which the public would be barred. When adopting portions of the 1973 UPA, the California Legislature imported the full text of the attorney fees provision, which was section 16 of the 1973 UPA, including its reference to the pretrial proceedings envisioned under section 10 of the 1973 UPA. However, the Legislature did not adopt section 10 or the corresponding "pretrial proceedings" portion of the 1973 UPA, and California does not use the procedure outlined in section 10. Given the term's particularized meaning in the 1973 UPA, there is no reason to conclude that the Legislature's inclusion of the term in the CUPA was intended to preclude the award of attorney fees for postjudgment proceedings. Rather, its presence indicates a desire on the part of the 1973 UPA drafters to ensure that courts would have the authority to award fees for this separate, informal proceeding. Because California does

not utilize any such proceeding, the inclusion of the term in the CUPA should not be credited with much significance.[10]

■ The trial court suggested that "[t]he differing levels of concern, and the resulting difference in fees provisions [between sections 2030 and 7640], may have been a recognition by the Legislature that compared to other types of family matters, litigation in paternity actions [is] *generally* less complicated, with fewer issues about which to litigate on the way to order or judgment." We disagree with this reasoning. Paternity actions may involve many of the same highly controversial and hotly contested issues that arise in other family matters, such as parental rights to custody, visitation, and child support. Interpreting the inclusion of the phrase "pretrial proceedings" as limiting the meaning of "action" to those events that occur prior to entry of judgment would contravene the policy behind allowing the distribution of attorney fees in proceedings involving the custody and care of children generally.

"The principle of the best interests of the child is the sine qua non of the family law process governing custody disputes." (*Banning, supra*, 119 Cal.App.4th at p. 447.) Imposing attorney fees on the wealthier party in paternity actions "ensure[s] that both sides of the custody dispute are represented and are able to present evidence bearing on the best interests of the child" when "a court is determining who gets custody of a child." (*Id.* at p. 451.)

To be sure, the same goals—i.e. determining the best interests of the child/children at issue in custody and visitation matters—are paramount, regardless of whether that child's parents are in a legally recognized relationship. The fact that these custody issues are resolved in the context of a petition to establish parental relationship rather than in a petition for dissolution does not alter the fact that custody and visitation issues are, ultimately, to be resolved in a manner consistent with the best interests of the children. It is not likely that the Legislature believed it less necessary to continue to protect the best interests of children born to unwed parents than those of children

---

[10] The trial court noted the distinction between section 2030's reference to entry of judgment and section 7640's inclusion of coverage for pretrial proceedings as being of some significance. The court concluded, "While this distinction may be the result of legislative inadvertence, it is just as likely that the Legislature artfully crafted these fees provisions while duly mindful of the various policy concerns that shape the contours of the complex body of family law." Although we might otherwise agree with the trial court's reasoning on this issue, there is evidence that the Legislature's crafting of this particular provision was less artful in its drafting or mindful of policy concerns than it was simply a wholesale adoption of the text of a provision of a uniform law. By simply importing the text word-for-word, the Legislature appears to have inadvertently retained the text's reference to a special proceeding that had not itself been adopted.

born during a marriage. We see no good reason to use the reference to a specialized informal proceeding in section 7640 as evidence that the Legislature intended to limit the court's ability to award attorney fees in a CUPA action for proceedings that occur after a judgment has been entered. "[O]ur system of justice depends on the presentation of evidence by opposing sides, recognizing that, most often, one side will not have exclusive possession of the truth. The requirement that father pay attorney's fees, even where he prevails on a legal issue, is necessary to insure that the welfare of the child he fathered is protected by a presentation of all evidence bearing on the various issues that arise in a custody dispute. The employment of an attorney is essential to allow laypersons, like mother, to present evidence bearing on the best interests of the child." (*Banning, supra*, 119 Cal.App.4th at pp. 449–450.)

Consistent with the family law's need to protect the interests of children in custody matters and the CUPA's contemplation of modifications to orders and judgments as to custody, visitation, and support, we read section 7640 as granting the trial court the discretion to apportion attorney fees for postjudgment proceedings based on the parties' relative abilities to pay. Because we do not interpret section 7640 as precluding the trial court from exercising its discretion to award attorney fees for proceedings that occur after a final order or judgment has been entered, we need not determine whether a final order or judgment was entered here.

Because the trial court believed it did not have the authority to award attorney fees, it failed to exercise its discretion to determine whether an award of such fees was appropriate. This was error, so we must reverse the court's order. However, we are not suggesting that the trial court should award Catherine some or all of the attorney fees she has requested. The trial court may determine that an award of attorney fees is not justified in this circumstance. Rather, we hold only that the trial court should have exercised its discretion to decide whether or not to award attorney fees under section 7640. Because we do not know how the court would have acted if it had exercised its authority under section 7640, we remand to allow the court to decide whether or not to award Catherine attorney fees.[11]

---

[11] In response to our request that the parties comment on the impact, if any, of the recent enactment of section 7605, Robert requested we take judicial notice of subsequent proceedings that have occurred in this case in the trial court. After considering the issue, we conclude that section 7605, a new provision authorizing attorney fees in CUPA actions, has no impact on the issues raised in this appeal. The court's order denying Catherine's request for fees was made prior to January 1, 2005, the effective date of section 7605, and there is no indication that the Legislature intended that this provision apply to pending cases. Because our decision does not rest in whole or in part on section 7605, we deny Robert's request for judicial notice.

## IV.

## DISPOSITION

The order of the trial court is reversed insofar as it concludes that it had no authority to award attorney fees to Catherine. The case is remanded, and the trial court is directed to consider whether or not to grant Catherine's request for attorney fees for the costs of litigating the OSC regarding custody and support. The parties are to bear their own costs on appeal.

Huffman, Acting P. J., and Nares, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 22, 2006, S140815. George, C. J., did not participate therein.