[No. D046465. Fourth Dist., Div. One. May 26, 2006.]

In re the Marriage of C. GREG and MICHELLE SHAUGHNESSY.
C. GREG SHAUGHNESSY, Respondent, v.
MICHELLE SHAUGHNESSY, Appellant.

**COUNSEL**

Bruce M. Beals for Appellant.

C. Greg Shaughnessy, in pro. per.; Feuerstein & Murphy, Richard P. Feuerstein; and Stephen Temko for Respondent.

**OPINION**

**AARON, J.—**

## I.

## INTRODUCTION

Michelle Shaughnessy (Michelle) appeals from a postjudgment order entered on April 14, 2005, modifying a 2003 judgment that required her former husband, C. Greg Shaughnessy (Greg), to pay her spousal support. Michelle and Greg were married for 15 years and had no children. At the time they separated in March 1995, Michelle was 35 years old. By 2005, Greg had been paying Michelle spousal support for nearly 10 years, supplementing her income as a self-employed florist. In the 2005 order modifying the judgment, the trial court ordered that the amount of spousal support be reduced from $2,000 per month to $1,000 per month beginning January 1, 2006, and that support terminate on June 30, 2006, unless Michelle demonstrates a compelling reason to extend the period of support.

On appeal, Michelle claims the trial court abused its discretion in ordering that spousal support be reduced and then terminated. Specifically, Michelle contends that there has been no material change in circumstances since the issuance of the prior spousal support award that would justify a change in the support order, and that the evidence did not support the court's finding that Michelle would be sufficiently self-supporting by the dates the court set for the reduction and termination of support. Michelle also claims that the trial court abused its discretion in ordering her support reduced and then terminated without first providing her with adequate warning of the court's expectation that she become self-supporting.

We conclude that the trial court did not abuse its discretion in modifying the prior spousal support award, based on the following changed circumstances: Michelle failed to diligently seek to become self-supporting, as required by the terms of the prior spousal support award; Michelle was currently receiving $20,000 per year from her parents; and the trial court could now determine that Michelle's benign tumor would not affect her ability to become self-supporting. We also conclude that the trial court did not abuse its discretion in finding that Michelle would be sufficiently self-supporting by the dates the court set for the reduction and termination of support. Finally, we conclude that the court provided Michelle with adequate notice of her obligation to attempt to become self-supporting. Accordingly, we affirm the order.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

Greg and Michelle married in November 1979 and separated in March 1995. They had no children together. In August 2000, Greg filed a petition for dissolution of the marriage. In February 2003, Michelle filed an amended request for dissolution of the marriage in which she requested that Greg pay her spousal support.

In February 2003, the court held a hearing regarding Michelle's request for spousal support, among other issues. By that time, Greg had been paying support for nearly eight years. In March 2003, the court entered a judgment dissolving the parties' marital status as of December 31, 2002, and reserving jurisdiction over other issues, including spousal support. On April 24, 2003, the court entered a partial judgment on the reserved issues.

In its April 2003 judgment, with respect to spousal support, the court stated:

"1. The court finds that as of the date of separation the parties enjoyed an upper middle class lifestyle as evidenced by the fact that the parties traveled frequently and they owned two pieces of property.

"2. The court finds that [Michelle's] earning capacity is not sufficient to meet her needs for the following reasons:

"a. [Michelle] does not possess marketable employment skills for the current job market. [Michelle] has a journalism degree, however, she has been a florist during most of the marriage. [Michelle] needs to be retrained and obtain computer skills.

"b. [Greg] earns a high wage and has the ability to pay a reasonable spousal support award.

"c. Based on [Michelle's] needs as established during the marriage [Michelle]'s income and earning capacity are insufficient to meet her needs. [Michelle's] expenses are high as currently presented but even if the amount was reduced to a reasonable amount, [Michelle] still needs spousal support.

"d. [Michelle] has significant separate property assets that produce income for the benefit of [Michelle]. The rate of return on [Michelle's] investments is not enough to sustain her life expectancy since [Michelle] is still a young woman.

"e. The marriage was of long duration, lasting more than fifteen years. The support order is presumed to be open ended in marriages of long duration.

"f. On the issue of health, the court finds there was significant evidence of [Michelle's] depression, however, this factor will not interfere with [Michelle's] ability to obtain employment. [Michelle] is being treated for a benign tumor with medication. The court is unable to determine the effect of that medical condition on [Michelle] in the future and on the issue of ongoing health insurance for [Michelle]. [Greg] appears to be in good health.

"g. The court finds the evidence regarding the issue of domestic violence by [Michelle] against [Greg] to be situational. There was no documentation at the time of the alleged domestic violence.

"h. There are no other tax consequences to the parties except those related to the sale of the parties' rental property. The tax consequences are considered by the court in determining the spousal support award.

"i. The balance of hardships weigh in favor of [Michelle].

"j. The requirement that parties should be self-supporting after one-half the length of the marriage does not apply to a marriage of long duration. [Michelle] began to realize one year ago she needs marketable skills and needs to look at retraining options.

"3. [Greg] will pay $2,000 per month in spousal support to [Michelle] effective January 1, 2003. [Greg] will receive credit for any amount of support he paid to [Michelle] in the months of January and February 2003.

"4. The court retains jurisdiction on the matter of spousal support."

In May 2004, Greg filed an application for an order to show cause (OSC) seeking to require that Michelle submit to a vocational examination and an independent medical examination. In a companion declaration filed with his application, Greg requested that the court terminate spousal support, or in the alternative, modify the prior spousal support award. As a second alternative, Greg requested that the court issue a jurisdictional step-down order pertaining to spousal support. In July 2004, the court ordered that Michelle submit to a vocational examination and an independent medical examination, based on a stipulation between the parties. During December 2004, Michelle underwent the vocational and medical examinations.

In February 2005, after the parties filed briefs with accompanying declarations, and lodged exhibits, the court held a hearing regarding Greg's request to terminate or modify spousal support. On April 14, 2005, the court entered an order that provided that the amount of spousal support would be reduced to $1,000 per month beginning January 1, 2006. The court also ordered that spousal support terminate on June 30, 2006, unless Michelle is able to demonstrate a compelling reason to extend the period of support.

The trial court's April 2005 order states in relevant part:

**"Findings:**

"1. The parties were married for 15 years.

"2. [Greg] has been paying spousal support to [Michelle] for almost 10 years.

"3. [Michelle[1]] was forewarned by the trial judge that she should be looking at seven years to begin to be self-supporting.

---

[1] The order actually refers to Greg, but it is clear from the record the trial court intended to refer to Michelle.

"4. [Michelle] does have a benign tumor, but that does not affect her ability to become self-supporting; it only affects her higher health care premiums.

"5. [Michelle] is still relatively young at 46 years of age.

"6. [Michelle] now has separate property investments in the amount of $500,000.

"7. [Michelle] has continued in her floral business despite the fact[] that she now claims she nets only around $650 per month from the business. [Michelle] should have been aware that if the above is true, the floral business is not the means for her continued long term economic well being. On the other hand, [Michelle] stated to the vocational expert that she netted $30,000 ($2,500 per month) from the business.

"8. [Michelle] states she is gifted $20,000 per year from her parents.

"9. The court has considered the Family Law [section] 4320 factors and finds there has been a change in circumstances that warrants modification of spousal support.

### "Orders:

"1. [Greg] shall continue to pay [Michelle] spousal support in the amount of $2,000 per month through December 31, 2005.

"2. Commencing January 1, 2006, spousal support shall be reduced to $1,000 per month.

"3. Spousal support shall terminate on June 30, 2006, unless [Michelle] can demonstrate in a motion filed prior to June 30, 2006 a compelling reason to extend the time period.

"4. The court finds the above step-down order is sufficient time for [Michelle] to achieve the goal of becoming self-supporting.

"5. Each party shall pay his/her respective attorney fees in that each has sufficient liquid property assets."

Michelle timely appeals.

## III.

## DISCUSSION

*The court did not abuse its discretion in modifying the April 2003 spousal support award*

Michelle claims the trial court abused its discretion in modifying the April 2003 spousal support award.

### A. *Standard of review*

In *In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 47 [35 Cal.Rptr.3d 716], the court noted that a trial court's order modifying a spousal support award is reviewed for an abuse of discretion: "The modification of a spousal support order is reviewed on appeal for abuse of discretion. In exercising its discretion the trial court must follow established legal principles and base its findings on substantial evidence. If the trial court conforms to these requirements its order will be upheld whether or not the appellate court agrees with it or would make the same order if it were a trial court." (Fn. omitted.)

### B. *The trial court did not abuse its discretion in determining that changed circumstances warranted modifying the April 2003 spousal support award*

Michelle claims the trial court abused its discretion in determining that changed circumstances supported modifying the April 2003 spousal support award.

#### 1. *The law governing a trial court's exercise of its discretion to modify a spousal support order*

■ "In exercising discretion whether to modify a spousal support order, 'the court considers the same criteria set forth in [Family Code] section 4320 as it considered when making the initial order . . . . [Citation.]' " (*In re Marriage of Bower* (2002) 96 Cal.App.4th 893, 899 [117 Cal.Rptr.2d 520].) Family Code[2] section 4320 provides:

"In ordering spousal support under this part, the court shall consider all of the following circumstances:

---

[2] Unless otherwise specified, all subsequent statutory references are to the Family Code.

"(a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:

"(1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.

"(2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties.

"(b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party.

"(c) The ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living.

"(d) The needs of each party based on the standard of living established during the marriage.

"(e) The obligations and assets, including the separate property, of each party.

"(f) The duration of the marriage.

"(g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party.

"(h) The age and health of the parties.

"(i) Documented evidence of any history of domestic violence, as defined in Section 6211, between the parties, including, but not limited to, consideration of emotional distress resulting from domestic violence perpetrated against the supported party by the supporting party, and consideration of any history of violence against the supporting party by the supported party.

"(j) The immediate and specific tax consequences to each party.

"(k) The balance of the hardships to each party.

"(*l*) The goal that the supported party shall be self-supporting within a reasonable period of time. Except in the case of a marriage of long duration as described in Section 4336,[3] a 'reasonable period of time' for purposes of this section generally shall be one-half the length of the marriage. However, nothing in this section is intended to limit the court's discretion to order support for a greater or lesser length of time, based on any of the other factors listed in this section, Section 4336, and the circumstances of the parties.

"(m) The criminal conviction of an abusive spouse shall be considered in making a reduction or elimination of a spousal support award in accordance with Section 4325.

"(n) Any other factors the court determines are just and equitable."

■ " ' "Modification of spousal support . . . requires a material change of circumstances since the last order. [Citations.]" ' " (*In re Marriage of Bower, supra*, 96 Cal.App.4th at p. 899.) However, "[t]he standard rule that modifications in support orders may only be granted if there has been a material change of circumstances since the last order [citation] was . . . not [designed] to circumvent the goal that supported spouses become self-supporting within a reasonable period of time. [Citation.]" (*In re Marriage of Schaffer* (1999) 69 Cal.App.4th 801, 803–804 [81 Cal.Rptr.2d 797].)

### 2. *Change of circumstances*

The trial court's April 2005 order contained several findings relevant to whether changed circumstances warranted modification of the April 2003 award.

> a. *Michelle's failure to diligently seek to become self-supporting constitutes a change in circumstances justifying a modification of the spousal support award*

Michelle contends that she diligently sought to become self-supporting through employment.

> (i) *Applicable law*

■ Section 4320, subdivision (a) requires that in awarding spousal support, the court consider the extent to which the supported party possesses,

---

[3] Section 4336 provides a presumption that a marriage of 10 years or more is a marriage of long duration.

or may come to possess, marketable employment skills sufficient to achieve the marital standard of living. Section 4320, subdivision (*l*) directs that the court also consider "[t]he goal that the supported party shall be self-supporting within a reasonable period of time."

A trial court acts within its discretion in denying spousal support where the supported spouse has failed to diligently seek employment sufficient to become self-supporting. (*In re Marriage of Sheridan* (1983) 140 Cal.App.3d 742, 749 [189 Cal.Rptr. 622] [trial court acted within its discretion in refusing to continue spousal support after five years following a 13-year marriage, where supported spouse "had done little to prepare herself for or to seek gainful employment"]; *In re Marriage of Rosan* (1972) 24 Cal.App.3d 885, 896 [101 Cal.Rptr. 295] ["When evidence exists that the party to be supported has unreasonably delayed or refused to seek employment consistent with her or his ability . . . that factor may be taken into consideration by the trial court in fixing the amount of support in the first instance or in modification proceedings"].) "Whether there has been such unreasonable delay is a question addressed peculiarly to the trial court which heard the party's testimony and observed the party's demeanor at trial." (*In re Marriage of Sheridan, supra,* 140 Cal.App.3d at p. 749.) There is no requirement that the failure to exercise diligence in seeking gainful employment has been in bad faith. (*Ibid.*)

In *In re Marriage of Schaffer, supra,* 69 Cal.App.4th at page 812, in affirming the trial court's refusal to continue spousal support after 15 years of support, following a 24-year marriage, the *Schaffer* court observed that the supporting spouse had "been forced to pay for [the supported spouse's] unwillingness to consider more suitable employment for a period of 15 years." The *Schaffer* court explained that "a supported spouse cannot make unwise decisions which have the effect of preventing him or her from becoming self-supporting and expect the supporting spouse to pick up the tab." (*Ibid.*)

■ Further, a material change of circumstances warranting a modification of spousal support may stem from unrealized expectations embodied in the previous order. (*In re Marriage of Lautsbaugh* (1999) 72 Cal.App.4th 1131, 1133 [85 Cal.Rptr.2d 688].) Specifically, changed expectations pertaining to the ability of a supported spouse to become self-supporting may constitute a change of circumstances warranting a modification of spousal support. (*In re Marriage of Beust* (1994) 23 Cal.App.4th 24, 29 [28 Cal.Rptr.2d 201].) Thus, if a court's initial spousal support award contemplates that a supported spouse will take some action to decrease the need for spousal support following the issuance of the order and the supported spouse fails to take that action, the court may modify the award on the ground of changed circumstances.

(ii) *Factual background*

In its initial spousal support award, the trial court found that Michelle did "not possess marketable employment skills for the current job market." The court further found that Michelle was a florist and that she would have to be "retrained" in order to find more lucrative employment. The court noted that Michelle had begun to realize, a year earlier, that she would have to obtain marketable employment skills and consider employment retraining options.

What Michelle's income was, both at the time of the initial support award in 2003, and in 2005, when the trial court modified the award, is not entirely clear. In a February 2003 income and expense declaration, Michelle stated that she earned an average of $2,102 per month ($25,224 per year) in net business income from her floral business. However, she submitted a profit and loss statement for her business that indicated that she had earned a total net profit for calendar year 2002 of only $2,566 ($213.83 per month). The difference between the two net income figures appears to be attributable to the fact that the figure in the income and expense declaration was not a true self-employment net income figure because it did not include deductions for the expenses incurred in running the business, such as the cost of flowers and advertising.

In her February 2005 income and expense declaration, Michelle stated that she had earned an average of $641 per month in net income over the previous 12 months ($7,692 per year) from self-employment as a florist. Michelle also filed a 2004 federal income tax profit statement for her floral business in which she reported gross receipts of $37,771 and, after deducting $13,779 for the costs of goods sold, gross income of $24,212. Michelle's profit statement indicated that she had net income of $7,697, after deducting from her gross income $5,011 in car and truck expenses and $6,269 for the business use of her home, among other items. In a vocational evaluation dated January 7, 2005, evaluator Kathleen Young stated that Michelle had said that "she nets approximately $30,000 per year," from self-employment.

In a July 6, 2004 rebuttal declaration submitted in support of her order to show cause to increase spousal support, Michelle stated: "To further increase my skills, next month I begin a computer instruction course designed toward developing an internet business. I am hoping that this venture may ultimately replace my floral income altogether." Vocational evaluator Young stated that Michelle had informed her that "her short-term goal is to continue with her floral arranging business," and that "she has considered starting some type of Internet/E-Bay business, but currently, does not have any specific plan of action." Young also stated that Michelle had informed her that "she is very confident she will continue earning a stable income long-term, in her floral

design business." Young opined that Michelle's "current earnings of $25,000–30,000 per year is her maximum current wage earning capacity." With respect to future earning capacity, Young stated that with retraining to become a graphic designer, which would take approximately two to three full-time semesters to complete, Michelle's "earnings would most likely start out close to $30,000 per year, and increase with time on the job."

In its April 2005 order modifying spousal support, the trial court noted that Michelle had continued in the floral business despite claiming to net only approximately $ 650 per month.

> (iii) *Michelle failed to diligently seek to become self-supporting, as required by the terms of the prior spousal support award*

The trial court's initial spousal support award was premised, in part, on the court's stated expectation that Michelle would obtain retraining in order to increase her income and become self-supporting. However, by April 2005, the evidence presented to the trial court indicated that Michelle had done little, if anything, to obtain retraining to increase her income, and that she had not otherwise been diligent in attempting to become self-supporting.

We conclude that Michelle's failure to diligently pursue retraining in order to attempt to become self-supporting constituted a change in circumstances justifying a modification of the spousal support order.

> b. *The trial court did not abuse its discretion in considering the fact that Michelle's parents gave her monetary gifts in the amount of $20,000 per year*

Michelle contends that a trial court may not consider monetary gifts to a supported spouse in considering whether to modify a spousal support award.

In April 2003, the trial court made no findings pertaining to any monetary gifts to Michelle. In 2005, the trial court found that Michelle's parents gave her $20,000 per year.[4]

There is no provision in the Family Code that expressly addresses whether a trial court may consider monetary gifts in awarding spousal

---

[4] Although the record is not entirely clear as to the number of years Michelle's parents had been making these gifts, Michelle raises no claim with respect to the court's factual finding that she "is gifted $20,000 per year from her parents." Further, Michelle acknowledges in her brief that she "confirmed receiving gift income from her parents" in the trial court.

support.[5] However, section 4320, subdivision (n), directs trial courts to consider "[a]ny other factors the court determines are just and equitable" in awarding spousal support.

In *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 480–482 [274 Cal.Rptr. 911], the court explained that equitable considerations are paramount in fashioning spousal support awards:

"Some members of the bench and bar have been critical of the Legislature, contending it has failed to specify the purpose of spousal support. This criticism is unjustified and demonstrates a lack of understanding about why the Legislature and appellate decisions have vested trial courts with such broad discretion to decide this issue, whether at trial or upon a later request for modification or termination. The purposes of spousal support inevitably vary from case to case, depending upon the parties and the facts and circumstances of the case . . . .

"In other words, the purpose of spousal support cannot be defined by the Legislature; it is a determination to be made by the trial court in each case before it, based upon the facts and equities of that case, weighing each of the circumstances or guidelines specified by the Legislature in [former] section 4801, subdivision (a) [current section 4320], which are applicable to that case, as well as those specified by appropriate appellate case law. In making its order on the issue of spousal support, it is essential that the trial court possess broad discretion in order to fairly exercise the weighing process contemplated by [former] section 4801, subdivision (a), with the goal of accomplishing substantial justice for the parties in the case before the court. The issue of spousal support, including its purpose, is one which is truly personal to the parties.

"Equitable considerations are the most significant factor in these cases. The Legislature and the appellate courts specify guidelines which must be considered by trial courts in deciding spousal support issues, but in the final analysis trial courts must possess broad discretion to decide the applicability and weight of these guidelines as they apply to the facts and equities of each case."

---

[5] When the Legislature intends to preclude a trial court from considering certain types of income in determining spousal support, it has done so expressly. For example, section 4323, subdivision (b) provides, "The income of a supporting spouse's subsequent spouse or nonmarital partner shall not be considered when determining or modifying spousal support." The absence of such an exception with respect to monetary gifts suggests that a trial court is not precluded from considering such gifts in determining a spousal support award. (See *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 26 [10 Cal.Rptr.2d 183, 832 P.2d 899] [" ' " 'Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed.' " [Citation.]' [Citation]"].)

■ The express provision in section 4320, subdivision (n) that a trial court is to consider any factors the court determines are just and equitable in awarding spousal support, the underlying purpose of California's spousal support statutes as outlined by the *Smith* court, and the absence of a specific provision on the issue, all support the conclusion that there is no per se rule precluding a trial court's considering monetary gifts a supported spouse may receive, in determining spousal support.

The parties have not cited, and our independent research has not uncovered, any California case that specifically addresses whether a trial court may consider monetary gifts to a supported spouse in determining spousal support. Michelle relies on *In re Marriage of McQuoid* (1991) 9 Cal.App.4th 1353 [12 Cal.Rptr.2d 737] (*McQuoid*) for the proposition that "[t]he court should not expect Michelle's parents to supplement her monthly living expenses as a replacement for spousal support." In *McQuoid*, the court addressed whether the trial court erred in determining the supported spouse's needs for purposes of awarding spousal support when, in setting the amount of spousal support, it considered expenses that the supported spouse did not actually incur:

"Husband argues that wife's nursing income is adequate to meet 'basic living costs.' He maintains that her expense claim is inflated because it includes 'desirable' costs as well as 'necessary' ones. He apparently refers to the fact that wife's expense declaration estimated rent payments of $850 a month, although she was admittedly paying far less because she and her daughters were living in the home of wife's mother who was also providing free child care. Husband's argument apparently is since his mother-in-law is subsidizing his wife and children's living expenses he has no support obligation for the value of that subsidy. He misconstrues the law.

"In awarding spousal support the court is obliged to consider a number of factors including '[t]he needs of each party based on the standard of living established during the marriage.' ([Former] § 4801 [current § 4320, subd. (d)].) . . . [Citation.] Reasonable rent and child care costs were appropriately considered in determining wife's monthly expenses." (*Id.* at p. 1360.)

The *McQuoid* court did not address the issue presented in this case, namely, whether a trial court is *precluded* from considering monetary gifts to the supported spouse in awarding spousal support. Rather, the *McQuoid* court held that the trial court had not abused it discretion in considering certain expenses that the supported spouse had not actually incurred in determining one of the statutory factors (§ 4320, subd. (d)) a trial court must consider in awarding spousal support. The *McQuoid* court did not address whether a trial court could properly consider the value of the in-kind contributions pursuant to section 4320, subdivision (n)'s requirement that a court consider "[a]ny other factors the court determines are just and equitable."

■ In *In re Marriage of Loh* (2001) 93 Cal.App.4th 325 [112 Cal.Rptr.2d 893] (*Loh*), the court determined that a trial court could consider in-kind contributions in setting child support pursuant to section 4057, subdivision (b)(5), which authorizes a trial court to award an amount of child support other than that calculated by use of the guideline formula provided in section 4055 when "[a]pplication of the formula would be unjust or inappropriate due to special circumstances in the particular case." (§ 4057, subd. (b)(5); see *Loh, supra,* 93 Cal.App.4th at p. 335.) Both section 4057, subdivision (b)(5) and section 4320, subdivision (n) are "catch-all" provisions that clarify the court's authority to consider special circumstances in a particular case in determining child support (§ 4057, subd. (b)(5)) and spousal support (§ 4320, subd. (n)). (Hogoboom and King, Cal. Practice Guide: Family Law (The Rutter Group 2005) (hereafter Hogoboom and King) ¶ 6:261, p. 6-116.6 [§ 4057, subd. (b)(5) is a "catch-all" provision]; id., ¶ 6:927, p. 6-338 [§ 4320, subd. (n) is a "catch-all" provision].)

There is more reason to conclude that a trial court may consider gifts in setting spousal support than in setting child support, because the purpose of spousal support varies on a case by case basis while "[t]he overriding policy behind the child support statutes is to assure that children share in their parents' standard of living and have adequate support." (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 312 [111 Cal.Rptr.2d 755].) Unlike child support, which courts generally calculate in accordance with the mathematical formula set forth in the mandatory guidelines (*id.* at p. 284), in awarding spousal support, a trial court has broad discretion in weighing numerous statutory factors. (*Id.* at p. 283.) If a trial court has the authority to consider gifts made to a spouse in determining *child* support, it follows that a trial court may consider gifts when exercising its broader discretion in fashioning an award of *spousal* support.[6]

■ In holding that a trial court may exercise its discretion to consider third party gifts to a supported spouse in determining a spousal support award, we emphasize that we do not hold that the trial court *must* mechanically decrease a supported spouse's award by the amount of any gifts

---

[6] *In re Marriage of Schulze* (1997) 60 Cal.App.4th 519 [70 Cal.Rptr.2d 488] (*Schulze*), on which Michelle relies, is not to the contrary. In *Schulze* the court stated, in dicta, "Gifts are not mentioned in section 4058, and, judging from the use of language lifted straight from the Internal Revenue Code, should logically be outside the purview of the child support statute." (*Schulze, supra,* 60 Cal.App.4th at p. 529.) However, the *Schulze* court also noted, "Because the record here is susceptible of the finding that the condominium subsidy and the use of the Mercedes were both *employment* perquisites and therefore *within* section 4058, we are spared the problem of whether they still might be used as factors to increase support even if they were gifts *outside* section 4058." (*Id.* at p. 530, fn. 10.) In *Loh,* Presiding Justice Sills, the author of both *Schulze* and *Loh,* explained that courts may consider such in-kind contributions in awarding child support pursuant to section 4057. (*Loh, supra,* 93 Cal.App.4th at p. 335.)

received, or even that the trial court *should* in every case consider such gifts in determining the appropriate level of support. Rather, we hold only that it is within the trial court's broad discretion to consider evidence of monetary gifts as one factor, together with evidence pertaining to all of the other section 4320 factors, in determining the appropriate spousal support award.[7]

 c. *The court determined that Michelle's benign tumor would not affect her ability to become self-supporting*

New information concerning Michelle's health constituted a change of circumstances supporting the court's modification of the spousal support award.

 Section 4320, subdivision (h) provides that the court must consider the health of the parties in ordering spousal support. (See, e.g., *In re Marriage of Brantner* (1977) 67 Cal.App.3d 416, 417 [136 Cal.Rptr. 635] [concluding trial court abused its discretion in reducing spousal support in view of, among other factors, the possibility the former spouse might become blind in the near future].)

In its original judgment, the trial court noted that Michelle's earning capacity was not sufficient to meet her needs because, among other reasons, the court was unable to determine the effect her health might have on her in the future. At the hearing on which the initial support order was based, the court stated: "As far as the age and health of the parties . . . . [¶] As far as [Michelle], there was significant evidence submitted that she has depression, which the Court does not feel is going to interfere with her ability to gain employment. However, she does also have a benign tumor, which requires her to maintain medication. And that is her—her health is an unknown factor, therefore, and as far as the effect it will have on her in the future and also the effect it will have on her—on her ability to obtain health insurance to be insured."

In the April 2005 order modifying the original support order, the trial court concluded that Michelle's benign tumor did not affect her ability to become self-supporting. This finding was supported by the findings of Dr. Jeffrey Sandler, who performed the independent medical examination of Michelle. In a letter dated December 14, 2004, Sandler stated that Michelle was able to work on a full-time basis and that she had no current work restrictions.

---

[7] Although Michelle contends that the trial court abused its discretion in weighing all of the section 4320 factors, an argument we reject in part III.B.3, *post,* her sole argument with specific reference to the monetary gifts she receives from her parents is that such gifts are "not an appropriate consideration in modifying support." We reject this broad proposition for the reasons stated in the body of the opinion.

Sandler did not anticipate that there would be any change in Michelle's physical condition in the future that would affect her ability to work.

Thus, while in 2003, the court was "unable to determine" the effect the tumor would have on Michelle's ability to work, by April 2005, the court had sufficient information to determine that Michelle's tumor would not affect her ability to become self-supporting. The trial court's April 2005 finding concerning Michelle's health constituted a change of circumstances supporting the court's modification of spousal support. (Compare Hogoboom and King, *supra*, at ¶ 6:921, p. 6-332 ["it may be error to set a fixed termination date where the supported party . . . has unresolved medical or psychiatric problems requiring further treatment"].)

3. *In view of the changed circumstances, the trial court did not abuse its discretion in weighing the section 4320 factors*

In weighing the section 4320 factors in light of the changed circumstances, the trial court could have reasonably concluded that a modification of the prior spousal support award was warranted. By the time of the 2005 hearing on Greg's OSC, Greg had been paying spousal support for nearly 10 years. Michelle was still relatively young at 46 years of age, was working and continued to be employable, and was receiving $20,000 per year from her parents. She had failed to diligently seek to obtain retraining or to otherwise become self-supporting, as required by the terms of the prior spousal support award. In addition, Michelle owned investments valued at $500,000. Michelle notes that since the time of the initial support order, her yearly health care expenses had increased by approximately $6,000 and Greg's yearly earnings had increased by approximately $10,000. However, we conclude that the trial court did not abuse its discretion by failing to consider these facts. Rather, the court considered this information together with all of the other section 4320 factors in modifying the April 2003 spousal support award. This was not an abuse of discretion.

C. *The trial court did not abuse its discretion in finding that Michelle would be sufficiently self-supporting by the dates the court set for the reduction and termination of support*

Michelle claims the trial court abused its discretion in finding that she would be sufficiently self-supporting by the dates the court set for the reduction and termination of support.

1. *Applicable law*

In *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 453 [143 Cal.Rptr. 139, 573 P.2d 41] (*Morrison*), the California Supreme Court held

that courts should be reticent about terminating support in lengthy marriages: "A trial court should not terminate jurisdiction to extend a future support order after a lengthy marriage, unless the record clearly indicates that the supported spouse will be able to adequately meet his or her financial needs at the time selected for termination of jurisdiction. In making its decision concerning the retention of jurisdiction, the court must rely only on the evidence in the record and the reasonable inferences to be drawn therefrom. It must not engage in speculation. If the record does not contain evidence of the supported spouse's ability to meet his or her future needs, the court should not 'burn its bridges' and fail to retain jurisdiction. [Citation.]"

However, the *Morrison* court emphasized that this standard does not require that a trial court retain jurisdiction in every case involving a lengthy marriage, particularly where the supported spouse is employed:

"These standards will not require a trial court to retain jurisdiction in every case involving a lengthy marriage. In some instances the record will indicate that both spouses are employed, an increasingly prevalent situation today, or that there are sufficient assets available to enable each to provide for his or her needs. In that event, no support or support for only a limited time, without a retention of jurisdiction, would be appropriate. [Citations.] Where jurisdiction has been retained in the original order, future modification hearings may well reveal that the supported spouse has found adequate employment, has delayed seeking employment, or has refused available employment. At that time, the court may appropriately consider such factors in deciding whether or not to modify its original order." (*Morrison, supra,* 20 Cal.3d at p. 453.)

"If the court feels the evidence justifies an order terminating jurisdiction at a future date, but is concerned about unforeseeable circumstances which might arise prior to that date, the proper approach would be to issue the kind of order approved by *In re Marriage of Richmond* (1980) 105 Cal.App.3d 352 [164 Cal.Rptr. 381]; what has become known as a 'Richmond' order." (*In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645, 665 [235 Cal.Rptr. 587] (*Prietsch*). The *Prietsch* court described the use of a "Richmond" order as follows:

"In order to avoid the *Morrison* prohibition against the trial court burning its bridges by fixing a definite date in the future at which time jurisdiction over spousal support will terminate, the court in a 'Richmond' order retains jurisdiction to modify both the amount and term for jurisdiction over spousal support conditioned upon the supported spouse, prior to the date set for termination of jurisdiction, filing a motion and showing good cause why the order should be modified either as to amount or term of jurisdiction, or both.

"The effect of a 'Richmond' order is to tell each spouse that the supported spouse has a specified period of time to become self-supporting, after which the obligation of the supporting spouse will cease." (*Prietsch, supra*, 190 Cal.App.3d at p. 665.)

"[A] 'Richmond' order is the most appropriate form of order for spousal support in all cases except (1) where spousal support is either not ordered, or is ordered for a fixed term of short duration, (2) in the most lengthy marriages where the circumstances justify truly 'permanent' spousal support, or (3) where the supported spouse does not possess the capacity to become self-sufficient." (*Prietsch, supra*, 190 Cal.App.3d at p. 665.)

Trial courts have broad discretion in determining the meaning of "self-supporting" in any particular case. Although, in general, the meaning of the term "self-supporting" is achieving the marital standard of living (see Hogoboom and King, *supra*, at ¶ 6:926.1, p. 6-336), the concept of the marital standard of living is itself often quite broad. Further, courts have held that the goal of achieving the marital standard of living may decrease in relative importance over time. (See *In re Marriage of Rising* (1999) 76 Cal.App.4th 472, 479, fn. 9 [90 Cal.Rptr.2d 380] [concluding trial court did not abuse its discretion in determining, 13 years after the dissolution, that "it was not necessary (or appropriate) to award wife the amount of support required to allow her to maintain the marital standard of living"].) Finally, although the marital standard of living is an important factor in determining spousal support, it is not the only factor, and its importance in determining whether it is "just and reasonable" (§ 4330) to award spousal support will vary based on the court's evaluation of the section 4320 factors.

## 2. *Analysis*

In this case, the trial court could reasonably have found that Michelle had the immediate capacity to earn $30,000 per year, and that if she had opted for retraining as she was directed to do in 2003, her earnings would likely exceed $30,000 per year in the future. In addition, the trial court was presented with new information that Michelle had been receiving $20,000 per year from her parents, that she owned liquid assets with a value of approximately $517,000 and that the equity in her house exceeded $400,000. Further, by the time the court entered its order reducing and then terminating spousal support, Michelle had been receiving spousal support for approximately 10 years.

The trial court could have reasonably concluded that in view of all of these circumstances, Michelle could become, and should become, sufficiently self-supporting within the dates the court set for the reduction and termination of spousal support. Further, in view of the fact that the date for termination of spousal support was approximately 11 years after the date of separation, the court could reasonably conclude that achieving the marital standard of living

was at this point in time deserving of less weight in balancing the section 4320 factors. (See *In re Marriage of Rising, supra,* 76 Cal.App.4th at p. 479, fn. 9.)

### D. *The trial court provided Michelle with adequate notice of her obligation to attempt to become self-supporting*

Michelle claims the trial court abused its discretion by ordering support reduced and then terminated without providing her with adequate notice of her obligation to attempt to become self-supporting.

 In *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705, 712 [250 Cal.Rptr. 148] (*Gavron*), the Court of Appeal concluded that the trial court erred in reducing a party's spousal support from $1,100 per month to $0 after a 25-year marriage and approximately eight years of support, where "the record d[id] not indicate that th[e] unemployed 57-year-old wife had any prior awareness that the court would require her to become self-sufficient." The *Gavron* court held that a supported spouse must be made aware of the court's expectation that the spouse will attempt to become self-supporting: "Inherent in the concept that the supported spouse's failure to at least make good-faith efforts to become self-sufficient can constitute a change in circumstances which could warrant a modification in spousal support is the premise that the supported spouse be made aware of the obligation to become self-supporting. It is particularly appropriate here that there should have been some reasonable advance warning that after an appropriate period of time the supported spouse was expected to become self-sufficient or face onerous legal and financial consequences. . . . [¶] . . . For example, there may be an explicit statement by the court at the time of its original support order regarding employment expectations of the supported spouse [citation] . . . ." (*Ibid.*)

In the court's original judgment in this case, the court checked a box indicating the applicability of the following provision: "NOTICE: It is the goal of this state that each party shall make reasonable good faith efforts to become self-supporting as provided for in Family Code section 4320. The failure to make reasonable good faith efforts may be one of the factors considered by the court as a basis for modifying or terminating spousal support."

Further, the court's April 2003 judgment states:

"2. The court finds that [Michelle's] earning capacity is not sufficient to meet her needs for the following reasons:

"a. [Michelle] does not possess marketable employment skills for the current job market. [Michelle] has a journalism degree, however, she has

been a florist during most of the marriage. [Michelle] needs to be retrained and obtain computer skills. [¶] . . . [¶]

"j. The requirement that parties should be self-supporting after one-half the length of the marriage does not apply to a marriage of long duration. [Michelle] began to realize one year ago she needs marketable skills and needs to look at retraining options."

In addition, at the February 2003 hearing on which the original judgment was based, the court stated: "Well, in this situation we have a marriage of long duration. So at a minimum, we'd be looking at seven years as a sort of starting off point as far as a reasonable period of time to begin to be self-supporting . . . . [Michelle] began to realize that the floral business that she was generating was not going to be a long-term answer for her economic needs. And she now recognizes that she needs new marketable skills and is beginning to or should begin to look into further retraining in that regard."

The court's statements at the February 2003 hearing and in its original judgment provided Michelle with notice that the court expected her to become self-supporting. The court referred to the statutory goal that former spouses become self-supporting and noted that Michelle would require retraining in order to achieve that goal. The court thus clearly communicated to Michelle its expectation that she would attempt to become self-supporting. Further, Michelle was significantly younger than the supported spouse in *Gavron* and was working at the time the court made its original support award and Greg had been paying support for 10 years after a 15-year marriage, while the husband in *Gavron* had been paying support for eight years after a 25-year marriage. (*Gavron, supra,* 203 Cal.App.3d 705.)

Although the marriage in this case was a lengthy one, that fact alone does not justify an unlimited spousal support award. In the absence of circumstances demonstrating that a spouse is incapable of becoming self-supporting, a person in Michelle's position cannot reasonably expect to receive spousal support indefinitely. Rather, the spouse should expect to be required to become self-supporting within a reasonable period of time. As noted above, Michelle was a college-educated 35 year old at the time she and Greg separated, and had no children from their marriage. She has had nearly 11 years since their separation to pursue more lucrative employment, but has failed to do so. Under these circumstances, receiving support for more than 10 years after a 15-year marriage, as Michelle has, is more than reasonable.

## IV.

## DISPOSITION

The order is affirmed. Respondent is entitled to costs on appeal.

McConnell, P. J., and Nares, J., concurred.