Filed 3/7/24  Marriage of Reagan CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of JAY and HEATHER REAGAN. | |
| JAY REAGAN, <br><br> Appellant, <br><br> v. <br><br> HEATHER REAGAN, <br><br> Respondent. | G063083 <br><br> (Super. Ct. No. SWD1401586) <br><br> O P I N I O N |

Appeal from an order of the Superior Court of Riverside County, Sean P. Lafferty, Judge.  Affirmed.

Westover Law Group and Andrew L. Westover for Respondent.

Hanson, Bradford & Hanich, Erick J. Bradford and Shaun Hanson for Appellant.

\*        \*        \*

Jay Reagan was ordered to pay Heather Reagan $1,063 in monthly spousal support following their divorce in 2014.[1] Seven years later, Jay filed a motion to eliminate or reduce spousal support. However, following a hearing on his motion, the family court increased spousal support by a few hundred dollars a month. Jay appeals, arguing the court erred by increasing spousal support. We find the court acted within its discretion and affirm the order.

I

FACTS AND PROCEDURAL HISTORY

The parties separated in June 2014 after 19 years of marriage. Jay obtained his bachelor's degree during the marriage and had average monthly income of $9,709 at separation. Heather had a high school diploma during the marriage (she obtained a medical assistant certificate after separation). She was primarily a homemaker and cared for the parties' children while Jay worked. At the time of separation, she had been unemployed since 2002.

A stipulated judgment for their divorce was entered in December 2014. The stipulated judgment required Jay to pay $1,063 a month in spousal support "until further order of the court, the death of either party, the remarriage of supported spouse or whichever first occurs." The parties' two children were 13 and 16 years old at the time of divorce. The stipulated judgment required Jay to pay Heather $1,690 in monthly child support.

In April 2021, Jay filed a request for an order to terminate spousal support or have it set at zero dollars. Jay asserted Heather no longer needed spousal support because she had been given sufficient time to become self-supporting and had been cohabitating with her boyfriend since 2019.

_____

[1] We refer to the parties by their first name to avoid confusion.

A multiday hearing was held on Jay's request, which concluded in December 2022 (the hearing). After the presentation of evidence, the court noted that Heather had been given a *Gavron* warning in May 2021.[2] It found she had not made satisfactory efforts to find a job since receiving the warning and admonished her. But it concluded her lack of effort did not warrant termination of spousal support at that time.

The court then calculated spousal support using the factors in Family Code section 4320.[3] It concluded the parties had lived a modest middle-class lifestyle and each party needed about $6,000 to meet that standard of living. Jay could meet the marital standard on his own, but the court found Heather could not currently do so by herself. She was unemployed and was only qualified for minimum wage work, which amounted to about $2,686 a month in income. The court thought she could eventually earn around $25 an hour, but she would need to "develop[] seniority [in] the position and accumulate some raises."

The court also found Heather's needs were offset by her cohabitation with her boyfriend. She lived in his home with two other roommates and paid him $400 a month in rent. He also paid for most of her travel expenses. When discussing the balance of the hardships on the parties, the court observed the parties' children were no longer minors and Jay was no longer paying child support. It reasoned that Jay had benefitted from not paying child support, while Heather experienced a corresponding "huge loss" in income due to the loss of child support.

Before announcing its ruling, the court commented, "The reason marriage of long duration . . . require this ongoing jurisdiction over support is because that's one of

---

[2] "[A] '*Gavron* warning' is a fair warning to the supported spouse he or she is expected to become self-supporting." (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 55.)

[3] All further undesignated statutory references are to the Family Code.

the things in that marital contract at the beginning that the parties have an obligation to each other, to some extent. And both parties have an obligation to meet their own needs. But when one cannot, the other party, to some extent, has an obligation to maintain that as well."

After considering all the section 4320 factors and the evidence presented, the court increased spousal support from $1,063 to either $1,300 or $1,400 per month. The court's written order sets spousal support at $1,300 per month, but its oral pronouncement of the ruling set support at $1,400 per month. It appears the written order should prevail. (See *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1169-1170.) But since the parties have not discussed this discrepancy, we will not decide the issue. The $100 difference is not substantial enough to affect our analysis of the questions raised here.

On appeal, Jay challenges the court's spousal support increase. He asserts four errors. First, the court failed to consider the parties' circumstances at the time of the hearing. Second, the court failed to apply a rebuttable presumption under section 4323 that Heather's need for support has decreased due to her cohabitation with her boyfriend. Third, the court placed too much weight on the parties' marital standard of living since they had been divorced for eight years by the time of the hearing. Fourth, the court erred by considering the expiration of child support in its analysis. We are not persuaded by these arguments.

## II

## DISCUSSION

### A. *Applicable Law*

"""The trial court has broad discretion to decide whether to modify a spousal support order. [Citation.]" [Citation.] In exercising that discretion, the court must consider the required factors set out in section 4320.' [Citation.] The first of these

4

factors, 'the marital standard of living, is relevant as a reference point against which the other statutory factors are to be weighed. [Citations.] The other statutory factors include: contributions to the supporting spouse's education, training, or career; the supporting spouse's ability to pay; the needs of each party, based on the marital standard of living; the obligations and assets of each party; the duration of the marriage; the opportunity for employment without undue interference with the children's interests; the age and health of the parties; tax consequences; the balance of hardships to the parties; the goal that the supported party be self-supporting within a reasonable period of time; and any other factors deemed just and equitable by the court.'" (*In re Marriage of Diamond* (2021) 72 Cal.App.5th 595, 601.)

An order modifying spousal support is reviewed for an abuse of discretion. (*In re Marriage of Schmir*, *supra*, 134 Cal.App.4th at p. 47.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) This standard of review "'requires us to uphold a ruling . . . even though we would not have ruled the same and a contrary ruling would also be sustainable. We cannot substitute our own judgment.'" (*Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 428.) Further, we presume the court's order is correct. It is the appellant's burden to show error. (*Universal Home Improvement, Inc. v. Robertson* (2020) 51 Cal.App.5th 116, 125-126.)

## B. Expiration of Child Support

We begin with Jay's single-paragraph argument that section 4326 barred the court from considering the expiration of child support when balancing the parties' hardships.

Section 4326, subdivision (a), provides, "the termination of child support . . . constitutes a change of circumstances that may be the basis for a request by either

5

party for modification of spousal support."  The purpose of this statute was to allow "the supported spouse . . . to return to court when a child support order terminates . . . , and make the case for [an increase in] spousal support . . . ."  (*In re Marriage of Kacik* (2009) 179 Cal.App.4th 410, 419, fn. 8.)  Section 4326, subdivision (b), sets a deadline to file such a motion:  "A motion to modify spousal support *based* on the change of circumstances described in subdivision (a) shall be filed by either party no later than six months from the date the child support order terminates."  (§ 4326, subd. (b), italics added.)  Jay argues the six-month deadline in subdivision (b) applies here.  Because child support terminated in 2019, he asserts the court could not consider its expiration when calculating spousal support in 2022.

However, nothing in the text of section 4326, subdivision (b), indicates it has any application here.  By its terms, the six-month deadline in this subdivision applies to the filing of a specific motion:  a motion to modify spousal support *based* on the termination of child support.  Such a motion cannot be filed after six months have passed from the termination of child support.  But neither party filed such a motion.  Rather, Jay moved to modify spousal support on grounds Heather was cohabitating with her boyfriend and had been given sufficient time to become self-supporting.  Nothing in the statute's text indicates the six-month deadline barred the court from considering the expiration of child support when applying the section 4320 factors to Jay's request.

Regardless, we need not decide whether section 4326 barred the court from considering the expiration of child support in its analysis.  Jay has not provided any authority showing section 4326, subdivision (b), is applicable here.  Nor has he provided any reasoned argument on this point.  Ignoring the background facts he provides, his entire argument under section 4326 consists of a single conclusory sentence:  "It is important to note that child support ceased for the parties' children years ago, in 2015 and 2019 respectively, and that the Court cannot consider an upward modification of spousal support on that basis after six months from the date child support terminates pursuant to

6

Family Code § 4326." We will not examine this underdeveloped argument. (*City of Riverside v. Horspool* (2014) 223 Cal.App.4th 670, 679, fn. 8 (*Horspool*) ["An appellate court is not required to examine undeveloped claims or to make arguments for the parties"].)

## C. *Circumstances at the Time of the Hearing*

The "Argument" section in Jay's opening brief contains a header stating, "The Court Must Measure Appellant's Modification Request By Comparing Those Circumstances That Existed At The Time Judgment Was Entered To The Circumstances That Exist At The Time Of The Modification Hearing." But the only text under this header is a single-sentence quotation from *In re Marriage of Tydlaska* (2003) 114 Cal.App.4th 572, 575-576, stating courts must consider the parties' circumstances as they exist at the time of the modification hearing. There is no argument or explanation of how this quotation relates to the facts here.

After Heather pointed out that Jay had failed to make any argument in this section, his reply brief responded, "the trial court received evidence at trial proving that both parties were in virtually identical economic situations at [the hearing] as they were at the time of the original Judgment, except [Heather] was now cohabiting." Jay then claimed the court failed to consider the changes in the parties' circumstances since the entry of the stipulated judgment. But Jay fails to identify the specific facts showing the parties were in "virtually identical economic situations." Nor does he provide any citations to the record to support this assertion. We will not independently search the record for such facts on his behalf. (*Horspool*, *supra*, 223 Cal.App.4th at p. 679, fn. 8.)

Besides, the record shows there have been material changes to each party's finances since the stipulated judgment. For instance, the parties' children were no longer minors at the time of the hearing, so Jay was no longer paying Heather $1,690 in monthly child support. Indeed, when weighing the hardships on the parties, the court found Jay

7

had "benefited by not having to pay child support," while Heather had suffered a corresponding "huge loss" in income.

## D. Cohabitation Presumption

"Except as otherwise agreed to by the parties in writing, there is a rebuttable presumption, affecting the burden of proof, of decreased need for spousal support if the supported party is cohabiting with a nonmarital partner. Upon a determination that circumstances have changed, the court may modify or terminate the spousal support . . . ." (§ 4323, subd. (a)(1).)

Jay claims the court failed to shift the burden of proof and only considered Heather's cohabitation with her boyfriend as one factor in its analysis of his request to terminate spousal support. But we presume the trial court's order is correct, and "[a]ll intendments and presumptions are indulged to support it . . . ." (*Universal Home Improvement, Inc. v. Robertson* (2020) 51 Cal.App.5th 116, 125-126.) Likewise, we presume the trial court was aware of and followed the applicable law. (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.) Based on these presumptions and the record, we can infer the trial court found Heather had rebutted the presumption in section 4323, subdivision (a)(1).

The court found Heather needed about $6,000 a month to meet the marital standard of living, but she was only qualified for minimum wage work, which would provide just $2,686 in monthly income. Thus, her "earning capacity . . . [was] insufficient to maintain the marital standard of living." Likewise, the court found there was "a wide gap" between Heather's current earning ability and the marital standard of living. The court also noted Jay had experienced a $1,640 increase in income since he was no longer paying child support, while Heather had lost that income.

However, the court also determined Heather's needs were "offset by her living arrangement with [her boyfriend]." Since her boyfriend was financially assisting her, the court found her needs "at this time have to be limited to the lower end of things, which would be closer to . . . [$]1,840."

Based on the above findings, we can infer the court concluded Heather had rebutted the presumption under section 4323, subdivision (a)(1), because her need for spousal support had increased since the stipulated judgment was entered. As set forth above, it observed Heather had lost a substantial portion of income since the stipulated judgment due to the expiration of child support. It also determined that despite Heather's cohabitation with her boyfriend, there was still a wide gap between her earning potential and her ability to meet the marital standard of living on her own. Thus, the court found an increase of spousal support was necessary so Heather could meet the marital standard of living.

*E. Marital Standard of Living*

Finally, Jay argues the court gave inappropriate weight to the marital standard of living since the parties had already been separated for eight years at the time of the hearing. He contends the marital standard of living deserves less weight after the passage of time. In support, he cites *In re Marriage of Rising* (1999) 76 Cal.App.4th 472 (*Rising*) and *In re Marriage of Shaughnessy* (2006) 139 Cal.App.4th 1225 (*Shaughnessy*). We are not persuaded by these cases. *Rising* and *Shaughnessy* both found the trial court *did not abuse its discretion* by determining the marital standard of living was entitled to less weight following the passage of time. (*Rising*, at pp. 478-479, fn. 9; *Shaughnessy*, at pp. 1247-1248.) As such, these cases only show the marital standard of living "*may* decrease in relative importance over time." (*Id.* at p. 1247, italics added.)

Jay has not explained why *Rising* and *Shaughnessy* compel a finding here that the court abused its discretion by failing to give less weight to the marital standard of

9

living. Given the long duration of their marriage (19 years) and Heather's current inability to earn more than minimum wage, the court could reasonably find the marital standard of living was still entitled to great weight only eight years after the divorce. (See *Shaughnessy*, *supra*, 139 Cal.App.4th at p. 1247 [importance of the marital standard of living "will vary based on the court's evaluation of the section 4320 factors"].)

Jay appears to contend the marital standard of living was entitled to less weight because Heather had been given adequate time to find full-time work and become self-sufficient. But the court addressed this argument. It "very seriously" considered Heather's inadequate attempts to find work. It admonished her and reiterated the *Gavron* warning, but it concluded her lack of effort was "not . . . sufficient to absolutely terminate, or suspend, [or] set at zero her spousal support." It likewise found the circumstances and evidence needed to terminate spousal support were not present at that time.

Jay has not explained how these findings were unreasonable. (See *Horspool*, *supra*, 223 Cal.App.4th at p. 679, fn. 8.) Nor do they appear to be unreasonable given the record. Heather had looked for work prior to receiving the *Gavron* warning in May 2021, and had applied to more than 20 jobs after receiving the warning. She obtained a medical assistant certificate after separation and had also registered with local hospitals to receive e-mail alerts if they had any job openings for which she was qualified. Since Heather had made some efforts to find a job, it was not unreasonable for the court to allow her more time to obtain full-time work so she could gain experience, increase her earning potential, and eventually become self-supporting.

III

DISPOSITION

The court's order modifying spousal support is affirmed.  Heather is entitled to her costs on this appeal.


MOORE, ACTING P. J.

WE CONCUR:


DELANEY, J.


GOODING, J.