Filed 9/25/25  Marriage of Kingkade CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re Marriage of JEROME F. and JoVONNA KINGKADE. | |
| JEROME F. KINGKADE, Respondent, v. JoVONNA KINGKADE, Appellant. | G063404, G063605 (Super. Ct. No. 08D010358) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Israel Claustro, Judge. Affirmed in part, reversed in part, and remanded.

The Zacher Firm and Dieter Zacher for Appellant.

The Blonska Firm and Jason A. Blonska for Respondent.

JoVonna Kingkade appeals from a postjudgment order terminating the spousal support obligation of her former husband Jerome Kingkade[1] and terminating the court's jurisdiction over spousal support. She contends the court abused its discretion by terminating spousal support because there was no material change of circumstances and Jerome requested a step-down reduction, not termination, of spousal support. She also argues the court erred in terminating its jurisdiction over spousal support and the *Gavron*[2] warning she received was insufficient. We conclude the court's termination of spousal support was not an abuse of its discretion and affirm this portion of the court's order. We also conclude the *Gavron* warnings JoVonna received were sufficient. But we reverse and remand to the trial court on the termination of jurisdiction issue.

FACTUAL AND PROCEDURAL HISTORY

JoVonna and Jerome were married 20 years 5 months before divorcing in 2010. They had four children, two of whom were minors at the time of the dissolution. During the marriage, JoVonna devoted her time to maintaining the home and caring for their children. After the birth of their first child, she did not work outside their home. Jerome was a high earner, which permitted them to enjoy a middle to upper income standard of living.

---

[1] For ease of reference and pursuant to the custom in family law cases, we refer to the parties by their first names. (*In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 508, fn. 1.) No disrespect is intended.

[2] *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705 (*Gavron*). "[A] '*Gavron* warning' is a fair warning to the supported spouse he or she is expected to become self-supporting." (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 55; accord, Fam. Code, § 4330, subd. (b).) Subsequent undesignated statutory references are to the Family Code.

At the time of the dissolution, Jerome earned a gross monthly income of $20,063 plus bonuses.

The dissolution judgment incorporated the terms of a written stipulated judgment. As relevant here, Jerome was obligated to pay JoVonna monthly spousal support in the amount of $2,700 through July 31, 2011, then $2,500 from August 1, 2011 through July 31, 2012, and another step-down to "$2,150 per month from August 1, 2012 until further order of the court." The stipulated judgment also required Jerome pay JoVonna 19.76 percent of bonus income he earned in excess of $240,756 annually, an "*Ostler & Smith*" bonus income payment.[3]

The stipulated judgment provided spousal support was to be paid monthly "and continuing until further order of the court, the death of either party, or the remarriage of [JoVonna], whichever first occurs." It further stated: "This spousal support order is predicated upon [Jerome]'s current earnings . . . as well as imputing income to [JoVonna] over the next year of $1,750 per month; $2,500 the following year; and $3,750 per [month from the following] year . . . forward. The parties stipulate that [JoVonna] has the ability to earn this amount of income based on her current skill set; however, for the next 36 months, if [JoVonna] does in fact obtain employment in which she earns more money than what is imputed to her, that fact shall not be a basis in which to modify this spousal support order. The parties acknowledge that this is a long-term marriage and [JoVonna] acknowledges receipt of a *Gavron* warning. [JoVonna] recognizes that failure to make reasonable good

---

[3] In *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, the Court of Appeal upheld a spousal support obligation that included, in addition to a fixed monthly amount, a percentage of the annual gross bonus the husband received. (*Id.* at pp. 42, 48–49.)

3

faith efforts to become self-supporting may be one of the factors considered by the Court as a basis for modifying or terminating spousal support."

Less than a year after the dissolution judgment was entered, Jerome sought to modify his child and spousal support obligations because he lost his job. He subsequently obtained a new job with a monthly gross salary of $23,750. After a hearing, the court ordered beginning in November 2011, Jerome's spousal support obligation was to remain "as described in the September 17, 201[0] judgment, including his obligation to pay a Smith Ostler percentage of any income he receives in excess of $23,750 per month." In its findings and order after hearing, the court stated JoVonna "is further ordered that consistent with the *Gavron* warning she received at the time of the entry of the judgment, she must make her best efforts to become self-supporting within a reasonable period of time."

Nine years later, in November 2020, Jerome moved to reduce his spousal support obligation, filing a request for order (RFO). At the time, his income was comparable to that in the past as his monthly gross income from employment was $22,536. He was paying $2,150 in monthly spousal support and 19.76 percent of bonus income he received in excess of $240,000. Using a Judicial Council request for order form, Jerome checked the box indicating he wanted the court to change (not end) the current spousal support order in the dissolution judgment. (There is a separate box for indicating the petitioning party wants to end the current support order.) Jerome requested the court reduce his spousal support obligation to $1,500 per month beginning on January 1, 2021 for a period of 12 months, then reduce it to $1,000 per month beginning on January 1, 2022, another step-down to $500 per month beginning on January 1, 2023, and remaining at $500 per month until he reached 65 years of age. He further requested when he turned 65 years old,

4

his spousal support obligation be reduced to zero and the court reserve jurisdiction over spousal support. He also sought the cessation of the *Ostler & Smith* percentage bonus payments. In support of his request, Jerome asserted a step-down order for his spousal support obligation was appropriate because sufficient time had passed since entry of the dissolution judgment for JoVonna to be self-supporting "with a reduced monthly spousal support payment from [him]." He requested the court find he could no longer afford to pay the same amount of spousal support as he had remarried and now had two minor children from his remarriage.

JoVonna opposed the request to reduce her spousal support and declared she was incapable of supporting herself at the standard of living she enjoyed during their 20 years of marriage.

In September 2021, Jerome's RFO was assigned to Judge McConville. Jerome lost his job in March 2022. On three dates in 2022, Judge McConville held a trial on the RFO. At the first hearing (May 2022), the court suspended Jerome's spousal support payments until he regained employment and ordered payments would resume for the amount previously ordered in the dissolution judgment once Jerome was reemployed.

At the three hearing dates, the court (Judge McConville) received evidence, hearing testimony from Jerome and JoVonna. In May 2022, Jerome was 60 years old. He had been paying spousal support to JoVonna for approximately 13 years since their separation in 2008.

Jerome remarried in 2011 and has two young boys from this union. He filed the RFO to step-down his spousal support obligation in 2020 because he was finding it difficult to pay his spousal support obligation to JoVonna and pay the expenses for his two young sons while saving for retirement. He also believed sufficient time had passed for JoVonna to be

5

self-supporting. The year he filed the RFO, his gross income was $366,530. At the time of the hearings in 2022, he was unemployed.

JoVonna was 63 years old in May 2022. After their youngest child graduated from high school in 2014, JoVonna started a recreational vehicle (RV) rental business. The business started with one RV; JoVonna acquired a second RV in 2015 and a third in 2017. She maintains three RVs she rents out to people. Her RV rental business is her only source of income other than her spousal support. This business was averaging only $758 a month in income according to her tax returns, taking into account depreciation. But in her testimony, she estimated she earned an average monthly income of about $3,000 from her RV business and $300 in dividends from investments.

The money she earned from her RV rental business and the monthly spousal support she received, not including the *Olster & Smith* bonus payments, were insufficient to pay her monthly expenses, which exceeded $10,000. She did not believe she was capable of earning enough money to be self-supporting. She had maximized her profits from her RV rental business as much as possible. By August 2022, because she had not received spousal support payments since the court suspended them in May, she had borrowed $50,000 to pay her expenses.

Since the dissolution judgment, JoVonna had neither applied for a job nor gone back to school. She knew there was a *Gavron* warning and was told she was expected to seek employment and help support herself. However, she believed "there was no chance [she] could ever support [her]self to the standard of living [she] was accustomed to." She had known since the divorce she could not support herself based on the results of her career assessment and what she knew about her own skills and qualifications. She did not think more job training would help her become self-supporting. Given her age and

health issues, JoVonna did not believe she could earn more than what she was earning from her RV rental business.

She believed she had made a reasonable and good-faith effort to be self-supporting since the dissolution. She had reduced her monthly expenses and tried to increase her profits in her RV rental business. She acknowledged there was no way she could pay all of her expenses with her RV business, but she had no plan to do anything else to earn income.

After the third hearing in August 2022, the court took the matter under submission. The court (Judge McConville) subsequently filed a written ruling on the submitted matter, which was to be deemed the formal order of the court. In it, the court made several factual findings and thoroughly analyzed the section 4320 factors. However, the court was unable to "reset the spousal support order" because Jerome's income remained an unknown factor as he was still unemployed. As Jerome's spousal support payments were suspended at the time of the ruling, the court ordered the matter "off calendar, subject to restoration within 90 days." If Jerome was reemployed within 90 days, he was to notify JoVonna of his new job within 48 hours and his spousal support payments would resume under the terms of the 2010 dissolution judgment. But he could file an application for an order to restore to the court's calendar the RFO he filed in November 2020. He could also seek to restore his RFO to the court's calendar if he remained unemployed.

Jerome remained unemployed, and in November 2022, within 90 days of the court's ruling, he requested the court restore his RFO to the calendar. The court granted the request and the matter was set for hearing in February 2023. In February 2023, the court (Judge Claustro) continued the matter to June 2023.

7

Jerome obtained a new job and started work at the end of April 2023. In May, he filed a new income and expense declaration, in which he indicated his gross monthly salary was $25,000. He also submitted a supplemental declaration in support of his request to modify the spousal support order from the dissolution judgment. He requested the "court reduce [his] spousal support obligation to zero," explaining since he filed his RFO in November 2020, he had paid JoVonna $98,565 in spousal support. He asserted he should no longer be obligated to pay spousal support because JoVonna "has had more than enough time to become self-supporting" and he cannot afford to continue paying spousal support as he gets closer to retirement age.

The parties filed a joint statement of section 4320 factors. In it, Jerome asked the court to set his spousal support obligation at zero "and reserve jurisdiction over the issue of spousal support." JoVonna requested the court deny Jerome relief.

In June 2023, the court (Judge Claustro) held a hearing at which both parties testified and presented closing arguments. By the time of this hearing, Jerome was 61 years old and JoVonna was 64 years old. Announcing its ruling from the bench, the court stated it was adopting Judge McConville's "ruling on the submitted matter" filed in August 2022. In reweighing the section 4320 factors, the court indicated it was considering the decrease in both parties' assets since Judge McConville's findings in 2022. The court found JoVonna was "a bit underemployed" and "there was a *Gavron* warning back many, many years ago." Explaining its ruling, the court stated: "There's been 12 years of spousal support payments. In my mind, after looking at all of the 4320 factors, the *Gavron* warning, the age of the parties, in particular, the fact [Jerome] is, in fact, now 61 and four years from retirement, it's likely

8

he is not going to retire. [¶] I believe he has made sufficient payments in this particular case to justify terminating spousal support. The court at this time is going to terminate spousal support effective immediately. I think there's sufficient evidence in the orders [*sic*] that supports that, and I wish both parties well."

The court's minute order for the hearing indicated: "The Court terminates jurisdiction over the issue of spousal support." In the minute order, Jerome's counsel was directed to prepare a formal order after hearing. Jerome's counsel prepared a proposed findings and order after hearing, which, consistent with the court's minute order, stated the court terminated jurisdiction over the issue of spousal support. In June and August 2023, JoVonna objected to this language as inconsistent with the court's oral ruling.

JoVonna filed a notice of appeal in November 2023 (case No. G063404) concerning the court's oral ruling and minute order. The trial court filed its findings and order after hearing in December 2023, after which JoVonna filed a second notice of appeal (case No. G063605). We ordered her first appeal (case No. G063404) as having been taken from the trial court's December 2023 findings and order after hearing and granted her motion to consolidate the two appeals.

DISCUSSION

JoVonna raises several claims challenging the court's order that ended her spousal support and terminated the court's jurisdiction over spousal support. We first address her claims concerning the court's reduction of Jerome's spousal support obligation to zero and secondly discuss her arguments concerning the court's termination of jurisdiction over spousal support.

9

I.

MODIFICATION OF SPOUSAL SUPPORT

JoVonna contends the court erred by terminating her spousal support because (1) there was no material change of circumstances warranting a modification of spousal support, and (2) Jerome requested the court step-down the amount of spousal support, not end it. We conclude the court did not abuse its discretion in terminating spousal support.

*A. Applicable Legal Principles Concerning Modification of a Spousal Support Order*

"In a judgment of dissolution . . . , the court may order a party to pay for the support of the other party an amount, for a period of time, that the court determines is just and reasonable, based on the standard of living established during the marriage, taking into consideration the circumstances as provided in Chapter 2 (commencing with Section 4320)." (§ 4330, subd. (a).) Section 4330 also provides that when ordering spousal support, a court may advise the supported spouse he or she "should make reasonable efforts to assist in providing for their support needs, taking into account the particular circumstances considered by the court pursuant to Section 4320," unless the court decides a warning is inadvisable in the case of a marriage of long duration. (*Id.*, subd. (b).) Section 4336 provides a marriage of 10 years or more is presumed "a marriage of long duration." (*Id.*, subd. (b).)

""""A motion for modification of spousal support may only be granted if there has been a material change of circumstances since the last order.""" (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 956 (*Minkin*); *In re Marriage West* (2007) 152 Cal.App.4th 240, 246 (*West*) [abuse of discretion to modify spousal support where there is not substantial evidence of material change of circumstances].) """"[I]n determining what constitutes a

10

change in circumstances the trial court is bound to give effect to the intent and reasonable expectations of the parties as expressed in the [marital settlement] agreement.""'" (*Minkin*, at p. 957.)

"The spouse seeking to modify support bears the burden to establish a material change in circumstances." (*Minkin, supra*, 11 Cal.App.5th at pp. 956–957.) Generally, a "'[c]hange of circumstances' means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs." (*West, supra*, 152 Cal.App.4th at p. 246.) "However, '[t]he standard rule that modifications in support orders may only be granted if there has been a material change of circumstances since the last order [citation] was . . . not [designed] to circumvent the goal that supported spouses become self-supporting within a reasonable period of time.'" (*In re Marriage of Shaughnessy* (2006) 139 Cal.App.4th 1225, 1237 (*Shaughnessy*); accord, *In re Marriage of Schaffer* (1999) 69 Cal.App.4th 801, 803 (*Schaffer*).) Thus, "changed expectations pertaining to the ability of a supported spouse to become self-supporting may constitute a change of circumstances warranting a modification of spousal support." (*Shaughnessy*, at p. 1238.) "[I]f a court's initial spousal support award contemplates that a supported spouse will take some action to decrease the need for spousal support following the issuance of the order and the supported spouse fails to take that action, the court may modify the award on the ground of changed circumstances." (*Ibid*.)

Once a court finds a material change of circumstances, it must consider the criteria in section 4320 in deciding whether to modify spousal support. (*Minkin, supra*, 11 Cal.App.5th at p. 956; *In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1475; *In re Marriage of Bower* (2002) 96 Cal.App.4th 893, 899.) Section 4320 enumerates several circumstances a

11

court must consider when ordering spousal support. The first is "[t]he extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account" (§ 4320, subd. (a)), the supported party's marketable skills (*id.*, subd. (a)(1)), and "[t]he extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties" (*id.*, subd. (a)(2)). Other circumstances include, among others, "[t]he ability of the supporting party to pay spousal support" (*id.*, subd. (c)), "[t]he needs of each party based on the standard of living established during the marriage" (*id.*, subd. (d)), "[t]he obligations and assets . . . of each party" (*id.*, subd. (e)), "[t]he duration of the marriage" (*id.*, subd. (f)), "[t]he age and health of the parties" (*id.*, subd. (h)), "[t]he goal that the supported party shall be self-supporting within a reasonable period of time" (*id.*, subd. (*l*)), and "[a]ny other factors the court determines are just and equitable (*id.*, subd. (n)). Section 4320 defines "a 'reasonable period of time'" as "one-half the length of the marriage," except in the case of a marriage of long duration. (*Id.*, subd. (*l*).)

"We review a trial court decision on a request to modify spousal support for an abuse of discretion. ""So long as the court exercised its discretion along legal lines, its decision will not be reversed on appeal if there is substantial evidence to support it."" [Citation.] We presume the court's decision is correct and the appealing party must affirmatively show error." (*Minkin, supra*, 11 Cal.App.5th at p. 957.)

*B. The Court Properly Found a Material Change of Circumstances*

JoVonna contends there was no material change of circumstances justifying Jerome filing his RFO to reduce his spousal support obligation in November 2020. We disagree.

In the court's written findings in August 2022, Judge McConville identified two material changes of circumstances. First, the court found Jerome's unemployment was a material change of circumstances. Second, the court found JoVonna's underemployment was a material change of circumstances from the dissolution judgment.[4]

JoVonna challenges the court's first finding while ignoring the second. She contends the court could not rely on Jerome's unemployment as a material change of circumstances because it occurred after he filed his RFO. She forfeits this contention, however, by failing to cite any authority to support it. (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 182 [failure to cite supporting authority forfeits issue].) Moreover, in argument before Judge McConville, she agreed Jerome's unemployment was a material change of circumstances.

Substantial evidence also supports the court's finding JoVonna's underemployment was a material change of circumstances. The dissolution judgment imputed $3,750 in monthly income to JoVonna as of 2013. In the dissolution judgment, the parties stipulated JoVonna "has the ability to earn this amount of income based on her current skill set." JoVonna acknowledged in the stipulated judgment her "receipt of a *Gavron* warning" and that

---

[4] We note the court also found these two changes of circumstances when it denied JoVonna's oral motion to deny the RFO for failure to demonstrate a material change of circumstances.

13

"failure to make reasonable good faith efforts to become self-supporting may be one of the factors considered by the Court as a basis for modifying or terminating spousal support." Thus, the dissolution judgment was premised on the expectation JoVonna would become self-supporting or at least "make reasonable good faith efforts" to do so. However, she did not.

JoVonna started her RV rental business in 2014. She testified as to different amounts for her average monthly income from her business; at one point she stated it was $758, but at another point, she estimated her monthly income was $3,000 from her business and $300 in investment dividends. Other than spousal support, these were her only sources of income. The court calculated JoVonna's average monthly income from her RV rental business to be $2,833 based on her net receivables for the years 2017 through 2020. This was less than the income imputed to her in the dissolution judgment.

Since the dissolution judgment, JoVonna had not applied for a job or gone back to school. The only recent job training she had done concerned her RV rental business. At the hearing in 2022, JoVonna admitted she was told she "was expected to eventually seek employment and help to support [her]self." But she was resolute in her belief she was incapable of earning enough to be self-supporting, testifying "there was no chance I could ever support myself to the standard of living I was accustomed to." She said she had known since the dissolution that she could not support herself based on the results of her career assessment and her own understanding of her skills and qualifications. Even with job training, she did not think she would be able to support herself. She recognized there was no way she could support herself with her RV rental business alone as her expenses exceeded her combined income from the business and the base spousal support payments.

14

But she believed she had made a reasonable and good-faith effort to be self-supporting with her RV rental business and felt she had maximized the profits from her business as much as she could. Given her age and health issues, she did not believe she would be able to earn more than she was earning with her RV rental business. She was also concerned, given her age and health issues, she would not be able to continue her business much longer.

As the trial court recognized, JoVonna was underemployed. The dissolution judgment imputed $3,750 in monthly income to JoVonna starting in 2013 based on her skills. Ten years later, she was making less than this with her RV rental business and was unwilling to attempt anything else to become self-supporting. She did not attempt to gain any job skills outside of those needed for her RV rental business, and she did not attempt to find any other type of employment. We conclude the court properly found JoVonna's failure to become self-supporting or make a reasonable effort to do so after 12 years of spousal support payments constituted a material change of circumstances justifying a modification of the spousal support. (See *Shaughnessy, supra*, 139 Cal.App.4th at p. 1240 [supported spouse's "failure to diligently pursue retraining in order to attempt to become self-supporting" after 10 years of spousal support "constituted a change in circumstances justifying a modification of the spousal support order"].)

*C. The Court Did Not Abuse Its Discretion by Terminating Spousal Support*

JoVonna contends the trial court abused its discretion by terminating her spousal support and should have instead "reset the amount of the monthly" spousal support. She asserts the court's discretion in modifying spousal support was limited because Jerome requested only a step-down of spousal support in his RFO and not termination of spousal support.

15

Again, she has not cited any legal authority to support this position and has therefore forfeited it. (*Pizarro v. Reynoso, supra*, 10 Cal.App.5th at p. 182.)

Moreover, as she notes in her brief, there are contrary facts in the record. When Jerome filed his RFO in 2020, he requested a step-down of his spousal support obligation to $1,500 per month beginning on January 1, 2021, for a period of 12 months, then a reduction to $1,000 per month for a year, with another step-down to $500 per month beginning on January 1, 2023, and remaining at $500 per month until he reached 65 years of age. He further requested that when he turned 65 years old, his spousal support obligation be reduced to zero. The court did not reach a final ruling on Jerome's RFO until June 2023. (Part of the delay was due to Jerome's period of unemployment from March 2022 to April 2023.) In 2023, when his RFO was restored to the court's calendar, Jerome requested the court immediately set spousal support at zero. Thus, Jerome's request to reduce his spousal support to zero was before the court at the time it ruled. JoVonna has not shown an abuse of the court's discretion.

To the extent JoVonna contends the court did not consider the section 4320 factors when deciding to terminate her spousal support, this contention is belied by the record. Judge Claustro adopted Judge McConville's detailed findings on the section 4320 factors, and after receiving additional evidence at the hearing in June 2023, Judge Claustro indicated he reweighed the section 4320 factors.

It appears one of the major reasons the court terminated spousal support was because JoVonna had not made sufficient efforts to become self-supporting after 12 years of spousal support. "A trial court acts within its discretion in denying spousal support where the supported spouse has failed to diligently seek employment sufficient to become self-supporting."

16

(*Shaughnessy, supra*, 139 Cal.App.4th at p. 1238.) "When evidence exists that the party to be supported has unreasonably delayed or refused to seek employment consistent with her or his ability, of course, that factor may be taken into consideration by the trial court in fixing the amount of support." (*In re Marriage of Rosan* (1972) 24 Cal.App.3d 885, 896.) "'Whether there has been such unreasonable delay is a question addressed peculiarly to the trial court which heard the party's testimony and observed the party's demeanor at trial.'" (*Shaughnessy*, at p. 1238.)

Here, JoVonna was more than reluctant to become self-supporting. She believed she could not support herself with her RV rental business but was unwilling to try anything else. "[A] supported spouse cannot make unwise decisions which have the effect of preventing him or her from becoming self-supporting and expect the supporting spouse to pick up the tab." (*Schaffer, supra*, 69 Cal.App.4th at p. 812.) In *Schaffer*, the appellate court concluded the trial court acted within its discretion when it refused to order more spousal support because the supporting party had "been forced to pay for [the supported party's] unwillingness to consider more suitable employment for a period of 15 years." (*Ibid.*) Similarly, in *Shaughnessy, supra*, 139 Cal.App.4th 1225, the Court of Appeal affirmed the trial court's order reducing spousal support because, among other changed circumstances, the supported party "failed to diligently seek to become self-supporting, as required by the terms of the prior spousal support award." (*Id.* at p. 1231.)

"Trial courts have broad discretion in determining the meaning of 'self-supporting' in any particular case. Although, in general, the meaning of the term 'self-supporting' is achieving the marital standard of living [citation], the concept of the marital standard of living is itself often quite broad. Further, courts have held that the goal of achieving the marital

17

standard of living may decrease in relative importance over time. [Citation.] Finally, although the marital standard of living is an important factor in determining spousal support, it is not the only factor, and its importance in determining whether it is 'just and reasonable' (§ 4330) to award spousal support will vary based on the court's evaluation of the section 4320 factors." (*Shaughnessy, supra*, 139 Cal.App.4th at p. 1247.)

We conclude the trial court did not abuse its discretion in terminating Jerome's spousal support obligation.

## II.

### *GAVRON* WARNING AND TERMINATION OF JURISDICTION

JoVonna contends the court erred by terminating jurisdiction over spousal support. She also asserts the *Gavron* warning she received in the dissolution judgment did not warn her the court could terminate jurisdiction over spousal support. Although we disagree with JoVonna's argument as to the *Gavron* warning, we reverse the court's order as to the termination of its jurisdiction over spousal support and remand for further proceedings on this issue.

### A. Sufficiency of the Gavron *Warning*

JoVonna contends the *Gavron* warning she received was insufficient because it did not warn her the court could terminate its jurisdiction over spousal support if she did not make good-faith efforts to become self-supporting. We disagree.

In *Gavron*, the Court of Appeal held a supported spouse should receive "some reasonable advance warning that after an appropriate period of time the supported spouse was expected to become self-sufficient or face onerous legal and financial consequences." (*Gavron, supra*, 203 Cal.App.3d at p. 712.) There, the appellate court found the trial court erred when it reduced

18

spousal support from $1,100 a month to $0 after a 25-year marriage and eight years of support because the trial court had not warned the supported spouse it would require her to become self-sufficient. (*Id.* at pp. 709, 712.) The *Gavron* court stated: "Inherent in the concept that the supported spouse's failure to at least make good-faith efforts to become self-sufficient can constitute a change in circumstances which could warrant a modification in spousal support is the premise that the supported spouse be made aware of the obligation to become self-supporting." (*Id.* at p. 712.) Section 4330, subdivision (b), is the codification of the warning required by *Gavron*. (*In re Marriage of Schmir, supra*, 134 Cal.App.4th at p. 55.) It provides a trial court discretion to determine whether to issue a *Gavron* warning.

JoVonna received at least two *Gavron* warnings between the time of the dissolution judgment and the court's termination of her spousal support: the first in the stipulated dissolution judgment in September 2010, and the second a little more than a year later in November 2011. Accordingly, JoVonna was twice warned she must make her best efforts to become self-supporting and her failure to do so could be considered by the court as a basis for terminating spousal support. Granted, JoVonna was not specifically warned her failure to make a good-faith effort to become self-supporting might result in the court terminating its jurisdiction over spousal support. But a sufficient *Gavron* warning need not explicitly spell out the specific consequences. (*Gavron, supra*, 203 Cal.App.3d at p. 712; see also, *Shaughnessy, supra*, 139 Cal.App.4th at pp. 1248–1249.) Thus, we are not persuaded by JoVonna's argument the *Gavron* warnings she received were insufficient because they did not expressly warn of the possibility the court might terminate jurisdiction over spousal support.

19

*B. Termination of Jurisdiction*

The trial court did not state in its oral ruling that it was terminating its jurisdiction over spousal support. But the court's minute order and findings and order after hearing state the court terminated its jurisdiction over spousal support. JoVonna focuses on this discrepancy and seeks the reversal of the order terminating the court's jurisdiction over spousal support.

"An order setting the amount of spousal support is" different in nature than an order terminating jurisdiction over support. (*In re Marriage of Morrison* (1978) 20 Cal.3d 437, 454, fn. 11 (*Morrison*).) "A court's decision concerning the amount of support can . . . be modified at any time during the support payment period." (*Ibid.*) However, when a court terminates jurisdiction, it forever loses its power to order support payments, regardless of the circumstances that subsequently develop. (*Ibid.*) Although they are two different orders, a court is guided by the same circumstances in setting the amount and duration of spousal support and in deciding whether to retain jurisdiction over such support. (*Id.* at p. 448.)

Several years ago in *Morrison*, the California Supreme Court elucidated a general rule that courts should be restrained in terminating jurisdiction in marriages of long duration, stating: "A trial court should not terminate jurisdiction to extend a future support order after a lengthy marriage, unless the record clearly indicates that the supported spouse will be able to adequately meet his or her financial needs at the time selected for termination of jurisdiction. In making its decision concerning the retention of jurisdiction, the court must rely only on the evidence in the record and the reasonable inferences to be drawn therefrom. It must not engage in speculation. If the record does not contain evidence of the supported spouse's

20

ability to meet his or her future needs, the court should not 'burn its bridges' and fail to retain jurisdiction." (*Morrison, supra*, 20 Cal.3d at p. 453; accord, *Shaughnessy, supra*, 139 Cal.App.4th at pp. 1245–1246.) But the high court also set out certain exceptions to this rule and explained a trial court was not required to retain jurisdiction in every case involving a marriage of long duration. (*Morrison*, at p. 453.) At the time *Morrison* was decided, the relevant statute (former Civ. Code, § 4801) provided for the termination of spousal support jurisdiction unless the trial court explicitly retained it in its order for spousal support. (*Morrison*, at p. 442.)

Now, under section 4336, a court retains jurisdiction over spousal support "indefinitely" for a long duration marriage "[e]xcept on written agreement of the parties to the contrary or a court order terminating spousal support." (§ 4336, subd. (a); *In re Marriage of Schu* (2014) 231 Cal.App.4th 394, 399.) Jerome and JoVonna's marriage comes within the statutory definition of a marriage of long duration (§ 4336, subd. (b)), and the parties stipulated to such in the dissolution judgment. Thus, the provisions of section 4336 apply. Section 4336, subdivision (a) is "clear and unambiguous in providing two mechanisms for divesting the court of its jurisdiction over spousal support in cases of long-term marriages. The parties may agree to such termination, or the court may order it. In either case, only specific language of termination will divest the court of its fundamental jurisdiction." (*In re Marriage of Ostrander* (1997) 53 Cal.App.4th 63, 65–66.) Under section 4336 "retention of jurisdiction is the rule; it is divestment of jurisdiction which requires an affirmative act." (*In re Marriage of Ostrander,* at p. 66.)

In Jerome's initial RFO filed in November 2020 and when the parties filed a joint statement of section 4320 factors in June 2023, Jerome requested the court reduce or terminate his spousal support obligation but

21

reserve jurisdiction over spousal support. In the hearings on his RFO before Judge McConville, Jerome did not request the court terminate its jurisdiction over spousal support. Nor did he do so at the hearing before Judge Claustro. Making an oral ruling from the bench, Judge Claustro discussed the section 4320 factors and stated the court was terminating "spousal support effective immediately." Based on the parties' arguments leading up to the court's oral ruling, we interpret the court's statement as terminating spousal support and not the court's jurisdiction over spousal support.

The court's oral ruling did not indicate the court was separately deciding to terminate its jurisdiction over spousal support, which is a distinct decision from whether to modify spousal support. (See *Morrison, supra*, 20 Cal.3d at p. 454, fn. 11.) The language stating the court was terminating its jurisdiction over spousal support first appeared in the court's minute order. Although JoVonna objected to this language in Jerome's proposed findings and order after hearing, the findings and order signed thereafter by the court contained this language. The findings and order after hearing goes beyond the requested relief and expands the court's oral ruling by terminating the court's jurisdiction over spousal support. Under such circumstances where the record is unclear, we will not presume the court terminated its jurisdiction over spousal support. In a marriage of long duration, "an intent to terminate jurisdiction will not be presumed." (*West, supra*, 152 Cal.App.4th at p. 249 [concluding where trial court set future date for spousal support to reduce to $0 but did not expressly state whether it retained jurisdiction over support, court did not terminate its jurisdiction on that date].) Accordingly, we reverse the court's order with respect to terminating its jurisdiction over spousal support and remand for further proceedings on this issue.

22

## DISPOSITION

The trial court's order granting Jerome's request to terminate his spousal support obligation is affirmed. The trial court's order is reversed as to the termination of jurisdiction over spousal support, and the matter is remanded to the trial court to conduct a hearing on whether jurisdiction over spousal support should be terminated. In the interest of justice, the parties are to bear their own costs on appeal.

MOTOIKE, ACTING P. J.

WE CONCUR:

SANCHEZ, J.

GOODING, J.